This is a proceeding to review and have annulled an award of the Industrial Accident Commission against petitioner, the insurance carrier of the Union Ice *Page 434 
Company, employer of Charles W. Young, deceased, made in favor of his widow and his minor son, in the maximum amount for death benefit allowed under the Compensation Act.
The facts are undisputed. Petitioner's statement thereof, accepted by the respondents, is its follows: "The Union Ice Company is engaged in the manufacture and delivery of ice in Los Angeles and vicinity, with plants at Hollywood and elsewhere. Delivery routes are laid out by its route foreman to enable its customers to be supplied in the most efficient and economical manner, and so laid out as to avoid the necessity of covering the same streets twice in any one day. Each driver is assigned to a designated route and one that he can cover in an average day, usually fairly early in the afternoon, and is through for the day and at liberty to go home as soon as the assigned route has been covered. The drivers are given more or less leeway in the time and manner of covering the route, and are expected to get their lunch during the day. No specified hour is set aside for lunch, the drivers being allowed to procure lunch as and whenever desired, in a public restaurant, at home or elsewhere.
"The deceased was an old employee of the Union Ice Company, thoroughly familiar with the particular route assigned to him. Frequently he covered a part of his route which would bring him to a cafeteria located at Palm Avenue and Santa Monica Boulevard, Sherman, about 7 A. M., made a delivery of ice to the cafeteria, and got his breakfast, then covered another portion of the route, returning to this same cafeteria about noon for lunch. Neither his assigned route nor the requirements of his customers necessitated his return to the cafeteria during the noon hour, this return being for the sole purpose of obtaining his noonday meal. As stated, he could have gone home for lunch, had he so desired, or obtained it elsewhere, the only requirement being that he make his route in average time, with considerable latitude to him. If he wanted to get home very early, he might hurry over his route or otherwise could take his time.
"On the day of the accident, as on frequent other occasions, the deceased was accompanied over his route by his minor son, the respondent Merle Wayne Young, the two *Page 435 
taking breakfast at the cafeteria at which time a delivery of ice was made there, and then returning to the cafeteria for lunch at about 11:30 A. M., and for no other purpose, the deceased having no business to transact in that vicinity at that time for his employer. The truck was parked on the opposite side of the street, and the two crossed the street to the cafeteria for lunch. After luncheon at the cafeteria, the father left the son in the cafeteria, and went on down the street to a cigar-store to get a 'smoke.' The boy crossed the street in safety to the truck, but the father, upon starting across after coming out of the cigar-store, was run down and killed after proceeding but a little way into the street, and before he crossed to the side on which his truck was parked."
[1] The finding of the Industrial Accident Commission on these facts is that the "injury occurring as above set forth, arose out of, and happened in the course of the employment of said employee." But such finding is not supported by the concurrence of the necessary conditions of compensation required by the act. (Stats. 1919, p. 912, sec. 6 [a].) [2] To entitle the representative of the deceased to recover in this case it must be shown that the employee, at the time of the injury, was not only "performing service growing out of and incidental to his employment, and acting within the course of his employment," but also that the injury was proximately caused by such employment. In the very broadest sense, of course, it is true that the injury to the decedent grew out of and was incidental to his employment, since it was necessary that he should return from the place where he lunched to the truck. The right to an award is not alone founded upon the fact that such is the case, but upon the fact that theservice the employee is rendering at the time of the injury grows out of and is incidental to the employment. For instance, it is the rule that an employee going to and from his place of employment is not rendering any service, and begins to render such service only when he arrives at the place of his employment, and proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his task. (Ocean Acc. etc. Co. v. Industrial Acc.Com., 173 Cal. 313, 322 [L.R.A. 1917B, 336, 159 P. 1041].) It was not intended by the Compensation Act that the employer *Page 436 
who comes within its provisions shall be the insurer of his employee at all times during the period of his employment. The employer is liable for compensation only when an injury occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (Fairbank Co. v. Industrial Com., 285 Ill. 11, 13
[120 N.E. 457].) There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be some causal connection between the employment and the injury in the sense that, by reason of the employment, there was an unusual or additional exposure of the injured party to the kind or character of hazard and danger (in this case an ordinary street risk) which caused the injury. The injury must have its origin in a risk connected with the employment, and must have flowed from that source as a rational and natural course. (In reBetts, 66 Ind. App. 484 [118 N.E. 551].) In that case, the employee, a furnace repairman, was returning from lunch to the place where he was working. He was riding with his employer. He said: "I want to get off and get some tobacco." As the driver stopped the horse, Betts stepped from the wagon into the street to go across to a store. He had taken but two or three steps when he was struck by an automobile and killed. His heirs were awarded compensation against the employer. In reversing the award the court said (66 Ind. App. 487 [118 N.E. 552]): "We understand that all of these cases recognize and in effect hold that: 'It is not enough for the applicant to say, "The accident would not have happened if I had not been engaged in that employment, or if I had not been at that particular place." He must go further and must say, "The accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some particular danger." ' "
Other cases affirming the rule which prevails in this state are Clarke v. Voorhees, 231 N.Y. 14 [131 N.E. 553]; Taylor v.Binswanger, 130 Va. 545 [107 S.E. 649].
On the day on which the injury occurred, Young, the decedent, breakfasted at the cafeteria located on Palm Avenue and Santa Monica Boulevard, at which time he made *Page 437 
his delivery of ice. Neither his assigned route nor the requirements of his customers necessitated his return to that place. He had no business to transact for his employer in that vicinity. His movements during the time he was getting his noonday lunch were dictated wholly by his own desires and as the convenience of the route admitted. Had he gone home for lunch, and been injured while returning to the place of his employment, the situation would be plain. We see no distinction between such a case and this. When he ceased delivering ice, deviated from his route, and returned to the cafeteria for lunch, he was not doing anything required by or incidental to the employer's business. When struck down by the automobile and injured, his relation to his employment had not changed.
It has been suggested that the injury to the deceased was the result of a hazard and risk to which he was exposed equally with the general public. That is unquestionably so, but, in view of the conclusion we have reached, it is not necessary to further consider that question.
Respondents rely very largely upon Burton Transfer Co. v.Industrial Acc. Com., 37 Cal.App. 657 [174 P. 72]. In that case, Fickett, the employee, was directed by his employer to haul a quantity of pipe to the depot. He procured his load and was on his way to his destination when the noon hour arrived. Because he knew the depot was closed from noon until 1 o'clock, Fickett stopped at the premises of his employer, which were directly on his way, parked the loaded truck on the opposite side of the street, and went across to the office. Shortly before 1 o'clock the employer ordered him to proceed and take his load to the depot, in order that he might be there "at the time they open the doors and get away a little quicker." The employee left the office, started to cross the street toward his truck, and was run down by a passing automobile. In affirming an award of compensation for his injuries the district court of appeal held that Fickett was injured in the regular and usual discharge of his duties and while obeying an instant direction of his employer. The mere statement of the facts is sufficient to differentiate that case from the one at bar. The decision in Papineau v. Industrial Acc. Com., 45 Cal.App. 181
[187 P. 108], also relied upon by respondents, is so far at variance with the recognized *Page 438 
legal principle accepted and followed in this state that it cannot be regarded as having any weight of authority. The facts underlying the decision in Judson Mfg. Co. v. Industrial Acc.Com., 181 Cal. 300 [184 P. 1], clearly differentiate that case from this.
The award is annulled.
Kerrigan, J., Myers, J., Lennon, J., Wilbur, C. J., and Seawell, J., concurred.
Rehearing denied.
In denying a rehearing the court filed the following opinion on March 17, 1923: