[L. A. No. 13029. In Bank.—July 2, 1934.]

GEORGE GRAF, Appellant, v. MONTECITO COUNTY WATER DISTRICT (an Incorporated County Water District), Respondent.

CURTIS PAYTON, Appellant, v. MONTECITO COUNTY WATER DISTRICT (an Incorporated County Water District), Respondent.

EDWARD W. SANDELL, Appellant, v. MONTECITO COUNTY WATER DISTRICT (an Incorporated County Water District), Respondent.

Butcher & Haines, Robertson & Crawford and Maxwell Nichols for Appellants.

Heaney, Price & Postel for Respondent.

THE COURT.—A hearing was granted in these consolidated cases after decision by the District Court of Appeal, Second Appellate District, Division Two. Upon further consideration we are satisfied that said court has correctly determined the issues, and we hereby adopt the following opinion of Mr. Justice Stephens as the opinion of this court:

"This is an appeal from a judgment of nonsuit. The appellants have consolidated their cases on appeal. Substantially the facts are as follows: On June 14, 1930, appellants were injured while riding on a railroad owned and operated by the respondent upon the respondent's premises; they brought suits for damages for personal injuries and upon conclusion of their cases in chief respondent upon motion therefor was granted a nonsuit upon the ground that the superior court did not have jurisdiction of the subject-matter of the actions because appellants, at the time they incurred their injuries, were employees of the respondent and that both appellants and respondent were subject to the provisions of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831) and that the industrial accident commission of the state of California has sole and exclusive jurisdiction of the claims of appellants. The record shows that appellants as employees of respondent resided at a camp maintained by the respondent near the site of Juncal dam in Santa Barbara county; that said dam was being constructed by respondent at the time of the accident and appellants' work was in connection with the construction thereof. On the day of the accident, at the customary hour of 4:30 o'clock in the afternoon,

appellants ceased work, returned to their homes in the camp, changed their clothing and made other preparation to go to the city of Santa Barbara over respondent's railroad. They boarded the train, which was called the 'Saturday Special' and at 4:50 o'clock in the afternoon the train left the camp with appellants on board. The train had been in operation for approximately a year prior to the accident, its rolling stock consisting of flatcars about three feet wide, and the record shows that while its primary purpose was to aid in the construction work it was in operation for one trip every Saturday evening for the purpose of accommodating the employees of the district, their families and invitees, without cost to them, to ride from the campsite to the south portal of what is known as the Doulton tunnel, some four or five miles from the camp, at which place other means of transportation was procured by the passengers to take them on to Santa Barbara. While some of the employees testified that sometimes during the week they walked through the tunnel, the evidence shows that the tunnel was dark, the floor uneven and wet. The appellants testified that some of the trips they made to Santa Barbara were for the purpose of recreation and to secure supplies for their use at the camp, but on the day of the accident they were going to Santa Barbara for the sole purpose of visiting friends and relatives, or to attend a theater.

"The issue on this appeal is whether the transportation furnished appellants by respondent was so connected with the employment that injury received by appellants while riding on the train arose out of or was incidental to their employment. Respondent contends that the transportation was furnished appellants as a matter of right and was an implied term of their contract of employment. The record does not disclose what the exact terms of their employment were; there was no testimony that such transportation was promised the employees as a part of their contract.

"Respondent cites many cases in support of its contention that an injury received while going to or coming from work by means of a conveyance furnished by the employer as an incident of the employment and in pursuance of the contract of hire arises out of and in the course of the employ-

ment and is compensable under the Workmen's Compensation, Insurance and Safety Act. But we think the facts of the instant case remove it from any influence of such cases. The injured employees were neither going to nor returning from their work, they lived at the campsite and had been to their abodes, changed their clothes and boarded the train for an excursion of pleasure wholly aside from their duties as employees. We cite the following two cases which cover the situation of the instant case and which are clearly and correctly reasoned to a like conclusion with ours: *California C. I. Exchange* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 Pac. 257], and *Hama Logging Co.* v. *Department of Labor and Industries*, 157 Wash. 96 [288 Pac. 655].

"Other contentions made by respondent are inapplicable to the facts of this case."

Judgment reversed.

SHENK, J., Dissenting.—I dissent. It appeared by both pleading and proof on behalf of the plaintiffs that as a part of the working rules and contracts of employment the defendant water district permitted, and the circumstances of location of work and hours of employment required, the use of the defendant's train as a means of access to and from lodgings provided by the employer. The railroad is not a common carrier and the passage was free of charge. The trial court applied the "premises" rule approved by this court in *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 Pac. 168], and numerous other cases to like effect. The judgment has been reversed on the theory of the "going and coming" rule notwithstanding the showing, clear to my mind, that the "premises" rule should apply to the facts appearing in the record.

Rehearing denied.

Shenk, J., and Preston, J., voted for a rehearing.