BRYNWOOD LAND COMPANY and another, Appellants, vs.
INDUSTRIAL COMMISSION and another, Respondents.

*May 20—June 16, 1943.*

For the appellants there was a brief by *Dougherty, Arnold
& Kivett* of Milwaukee, and oral argument by *Glenn R.
Dougherty.*

For the respondent Industrial Commission there was a
brief by the *Attorney General* and *Mortimer Levitan,* assistant
attorney general, and oral argument by *Mr. Levitan.*

*Michael Levin* of Milwaukee, for the respondent Salvatore
Fuggiasco.

MARTIN, J.    Salvatore Fuggiasco, age fifteen on May 14,
1941, started to caddy at the Brynwood golf course on

June 24, 1941. He was assigned caddy No. 134. He was expected to report each morning at 8 o'clock. On arriving at the golf grounds he would report to the caddy master, then go to the caddy shack to await a call to serve as a caddy. He worked one week before being injured on July 1, 1941. On September 25, 1941, he filed an application with the Industrial Commission, claiming a partial loss of sight of one eye as a result of an injury sustained while playing "jackknife baseball" on July 1, 1941. A hearing was had on November 18, 1941.

Brynwood Land Company and its insurance carrier denied that the employer and employee were subject to the Workmen's Compensation Act; denied that the relationship of employer and employee existed at the time of the injury; denied that at the time of the injury the employee was performing services growing out of and incidental to his employment. The examiner before whom the hearing was had found that at the time of his injury applicant was on duty as a caddy and was performing services growing out of and incidental to his employment; that the injury was not self-inflicted. On February 3, 1942, appellants filed a petition for a review of the findings and award of the examiner. On February 21st the Industrial Commission as a whole affirmed the findings and award of the examiner. This action was brought to vacate and set aside the award of the commission. The court affirmed the award. Plaintiffs appeal.

The applicant testified that when caddies report for work they are directed by the caddy master to go to the caddy shack and remain there until their numbers are called. When their numbers are called, they go to the pro shop, get the player's golf bag, and go out on the golf course. Applicant had played jackknife baseball before the day he was injured. On the day he was injured he had reported to the caddy master at 8 o'clock that morning. He and other boys had played a couple of games of jackknife baseball before he was injured. The accident happened in the caddy shack. He had not been

out on the golf course caddying for anyone that day prior to being injured. In playing jackknife baseball applicant used his own knife. It had stuck hard into the wood of the floor of the caddy shack, and when he pulled it with his finger to flip it it came straight up and struck him in the eye. The club had provided cards, quoits, and horseshoes for the boys' entertainment while they were awaiting call. They played either inside the caddy house or outside. Applicant admitted that he had been warned by his brother, the assistant caddy master, against playing with knives. Applicant testified he did not know whether the professional at the club or the caddy master knew that they had been previously or were on the day in question playing jacknife baseball.

The caddies go out in turn in numerical order. If they are not present when their number is called their turn is missed. If the caddy's number had not been called before he arrived he would go out in his regular turn. They were called for work as caddies by the caddy master as demand for caddies was made. The caddy house is provided by the club and they are supposed to be at that place when not actually carrying bags.

Sub. (5), sec. 102.07, Stats., provides:

"Any person on a golf course for the purpose of caddying for or while caddying for a person permitted to play golf on such course shall be deemed an employee of the golf club or other person, partnership, association, corporation, including the state and any municipal corporation or other political subdivision thereof, operating such golf course."

Appellants contend that sec. 102.07 (5), Stats., is unconstitutional as depriving employers affected thereby of their property without due process of law and denies to them the equal protection of the law. While the examiner found that Fuggiasco was an employee under sec. 102.07 (5), which was in effect at the time he was injured, the commission, in

affirming the award of the examiner, makes no reference to said subsection. In its memorandum the commission said, "applicant [Fuggiasco] was a caddy employed by respondent [appellant] golf club." That means there was a contract of hire between the Brynwood Land Company and Fuggiasco. This finding of fact is without dispute in the evidence. There is no occasion to give further consideration to the contention that sub. (5) of sec. 102.07 is unconstitutional. The statute here involved is sec. 102.03, which provides in part:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

"(a) Where the employee sustains an injury.

"(b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.

"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . .

"(d) Where the injury is not intentionally self-inflicted.

"(e) Where the accident or disease causing injury arises out of his employment."

Both the commission and the court below said that the serious question is whether or not his (Fuggiasco's) injury arose out of his employment. We think it is the crucial question in the case. There is no conflict in the evidence as to the facts. The applicant was on the premises of his employer, in or in the vicinity of the caddy house, waiting for the call of his number to caddy. If he did not respond when his number was called he would be passed and succeeding numbers would be called; in which event, his number might not again be called that day—all depending on the number of caddies demanded by those playing golf. He was not obliged to report for duty unless he wished to. Likewise, he was not required to remain waiting for a call. He was free to conduct himself according to his own wishes in the way of entertainment while he was not actually engaged in caddying.

On the undisputed facts the case falls within the rule in *State Young Men's C. Asso. v. Industrial Comm.* 235 Wis. 161, 292 N. W. 324.  In that case the applicant (Kregel), a medical student, was employed as a counselor to assist the first-aid medical director at the plaintiff's summer camp for the period from June 17 to August 26, 1938.  He was paid $75 and room and board.  Five hours a day he was required to be in the camp infirmary and he was subject to call when on free time with the exception of a twenty-four-hour period each week.  He was usually within the camp area.  When not actually occupied he was privileged to use the camp recreational facilities.  Among these were tennis courts furnished with nets.  The counselors used their own racquets and tennis balls.  On July 21, 1938, Kregel and three other counselors were engaged in a game of tennis when a ball struck him in the left eye causing the injury complained of. The commission found Kregel was injured in the course of his employment, that his injury arose out of his employment, and made an award.  The circuit court affirmed the award. On appeal this court reversed the judgment, remanded the cause with directions to enter judgment setting aside the award of the Industrial Commission.  This court said (p. 163) :

"The testimony shows the employer's policy as to privileges accorded counselors, and that the employees were not required to participate in games or indulge in physical exertion.

"The award was made on the theory that employees' participation added to the camp morale, and furnished intangible stock in trade in the nature of character building and leadership in the employees from which the employer derived benefit. But the circumstances and the contract as disclosed by the evidence do not sustain the findings.  The exercise of his privilege to join in a game of tennis with other employees who were also indulging in the pleasure did not result in service to the employer.  He and his companions were free to use their time to suit themselves.  It was while playing in this

manner that Kregel was struck in the eye with a tennis ball. At the time he was exercising a personal privilege apart from any interest of the employer, the nature of which cannot be considered as being for the benefit of the employer or for the mutual benefit of both. His play was without direction or compulsion of any kind which required him to take part, and no duty was imposed on him. Nor would he be discharged for failure to participate.

"The argument is made that because he was subject to call, his activities in the meantime were so related to his employment as to keep him in service. This is similar to the claim made in the case of *Brienen v. Wisconsin Public Service Co.* 166 Wis. 24, 163 N. W. 182. Compensation was there denied because at the time of injury the claimant was not performing any service growing out of or incidental to his employment."

It will be observed that Kregel was employed for a ten-week period for which he was to receive $75 and room and board, for five hours a day services in the camp infirmary; that he was subject to call at any time during his free time with the exception of a twenty-four-hour period each week. The sports facilities—the tennis courts, were in the camp area, furnished by the State Young Men's Christian Association, except tennis racquets and balls. We think that a stronger case for compensation than the instant case.

The undisputed evidence, under the rule in the *State Y. M. C. A. Case, supra,* compels us to hold that the finding that the injury in question arose out of and in the course of applicant's employment is not sustained by the evidence.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment setting aside the award of the Industrial Commission.