[Civ. No. 17211. Second Dist., Div. Three. Nov. 2, 1949.]

ARABIAN AMERICAN OIL COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JEAN FRANCES BROWN, Respondents.

Lawler, Felix & Hall and Douglas Van Dyke for Petitioner.

T. Groezinger, Robert Ball and Charles A. Son for Respondents.

WOOD, J.—Petition for a writ of review whereby it is sought to annul an award of the Industrial Accident Commission.

Petitioner and Jean Frances Brown entered into a contract of employment in California, the provisions of which were stated in a "Letter of Agreement," dated August 19, 1947. The letter was received in evidence, and it stated that Miss Brown was employed by petitioner for service in its "Zone of Operations" which zone "is understood to mean Saudi Arabia, and any other foreign locality to which employee may be transferred for service," for a minimum period of two years; her classification would be "Stenographer," but she might be assigned to other work at any time; upon her arrival in the zone of operations she would "be subject to the instructions of the Management"; during her service with petitioner she would be "required to abide by such rules and regulations as may be in effect in the Zone of Operations"; petitioner would designate the means and route of travel to be used and provide for reasonable expenses incurred while traveling for the account of petitioner; and that the petitioner

might summarily dismiss her for conduct which would be detrimental to the best interests of petitioner, for wilful neglect of duties, or for noncompliance with regulations.

The zone of operations to which Miss Brown was sent was Dhahran, Saudi Arabia, which was referred to at the trial as a "company town." Dhahran consisted of administration buildings, oil installations, living quarters for the employees, a "messhall," and recreational facilities which included a library, a club house, a baseball diamond, motion pictures, and a swimming pool. Dhahran was inclosed by a wire fence about 6 feet high. The fence was to keep the natives out of the town. Apparently the fence inclosed a large area—Miss Brown having testified that she saw the fence when she was at or near the main gate; and that it took about 8 minutes for her to go by bus from the place where she lived to the place where she worked. Outside the fence there was an area known as "Old Dhahran," which consisted of other administration buildings. Miss Brown worked in one of those buildings. Also outside the fence was a golf course which petitioner maintained for the use of its employees. Petitioner furnished its employees with board and lodging and transportation to and from work. It also permitted the employees to use its automobiles for pleasure after working hours. It maintained a "car pool," which was made up of all the vehicles owned by it, including those used in petitioner's business during working hours. Upon request, the male employees were given written authorization to use vehicles from the "car pool" for a designated number of hours. They were not, however, permitted to use them for pleasure purposes inside the fenced area. There was one main gate in the fence inclosing Dhahran. Immediately outside this gate there was a checking station at which the driver of a vehicle which was being used for pleasure was required to stop, sign his name, and state his approximate destination. He was also required to check in upon his return. There were three roads from Dhahran to other towns. One of those roads was to the town of Abqaq, about 50 miles away, and the road apparently was built by petitioner.

On May 20, 1948, Miss Brown, who planned to go to a beach that evening with a coemployee, Mr. Reardon, returned to her living quarters after working hours and changed her clothing to beach apparel. About 6 p.m. Mr. Reardon, who was driving a pickup truck which he had obtained from the "car pool," called for Miss Brown at her living quarters,

and they went in the truck to the mess hall where they had dinner. They then reentered the truck and started to go to a beach, known as "Half-Moon Bay," on the Persian Gulf. Miss Brown testified that they went through the main gate, and at that time there was someone at the checking station; that it was the duty of the person at the station to check the truck out, but she did not remember whether Mr. Reardon stopped—that many times he "was not stopped going in and out of the gate because his job necessitated going in and out of the gate so they just waved him by." There was no road from Dhahran to Half Moon Bay. Miss Brown testified that they proceeded along the road toward Abqaq for approximately 15 miles and then they turned off that road, onto the sand, and proceeded toward Half Moon Bay; that there was no road extending from the Abqaq road to Half Moon Bay; that the bay was about one mile from the point where they turned off the road; that there were various trails "if they hadn't been covered over by the sand"; that it was open country; that an experienced driver could recognize solid sand from its color and texture; that they proceeded toward the bay, and "to stay on solid ground we were on these hills, sand hills or sand dunes"; that they tried to follow the path closest to the sign that indicated the direction of the bay; that while en route to a particular spot on the beach Mr. Reardon drove onto a sand dune which "instead of being a round dune it had a direct drop on it" and the truck nose-dived off that hill and dropped about 12 feet; and that she sustained severe injuries. She testified further that Half Moon Bay was recognized as the best bathing beach on that coast, and it was used on holidays and nonworking days by employees of petitioner; it was also used by employees of petitioner's subcontractors, and by the Army; she had been there at least five times; it was not maintained by petitioner, and there was no wharf, pier or other development there; petitioner had some restrictions as to where its employees went—they were not permitted to go into "the very interior of the desert"; there was no restriction against going to the towns of Abqaq and Rastanura; and there was no restriction against going to Half Moon Bay—it "was accepted like a public beach."

Section 3600 of the Labor Code provides that liability for compensation shall exist against an employer for any injury sustained by his employees arising out of and in the course of the employment in those cases where, among others, the

following conditions of compensation *concur* : '' (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment'' and ''(c) Where the injury is proximately caused by the employment, either with or without negligence.''

Petitioner contends that the injury did not arise out of or in the course of the employment, and that the injury was not proximately caused by the employment. That contention is sustained. Miss Brown had finished her work for the day, had gone home and changed her clothing to beach apparel, had eaten dinner, left petitioner's premises and, at the time of the accident, was on a pleasure trip. While petitioner permitted employees, after working hours, to use its motor vehicles for pleasure, it did not require them to do so. Miss Brown had complete freedom in deciding whether she should go on a pleasure trip, in selecting an escort and driver, and in deciding where to go. The mere fact that she was riding in a vehicle owned by petitioner at the time of the accident is not sufficient to create liability under the Workmen's Compensation Act. In *Graf* v. *Montecito County Water Dist.* (and consolidated actions for damages), 1 Cal.2d 222 [34 P.2d 138], the trial court rendered a judgment of nonsuit on the ground that the Industrial Accident Commission had exclusive jurisdiction of the claims. The Supreme Court, in reversing that judgment, held that the Industrial Accident Commission did not have jurisdiction. The plaintiffs therein were employed by defendant to help construct a dam in Santa Barbara County, and as such employees they resided near the dam at a camp maintained by defendant. The defendant therein owned and operated a train of flat cars in connection with the construction of the dam. Each Saturday afternoon the defendant operated the train as the ''Saturday Special'' to furnish transportation, without charge, to its employees who desired to go to Santa Barbara. At the time of the accident therein, the plaintiffs were going to Santa Barbara for the purpose of visiting friends and relatives or to attend a theater. In holding that the injuries were not compensable under the Workmen's Compensation Act the court therein stated, at page 224: '' 'The issue on this appeal is whether the transportation furnished appellants by respondent was so connected with the employment that injury received by appellants while riding on the train arose out of or was incidental to their employment. Respondent contends that the

transportation was furnished appellants as a matter of right and was an implied term of their contract of employment. The record does not disclose what the exact terms of their employment were; there was no testimony that such transportation was promised the employees as a part of their contract. Respondent cites many cases in support of its contention that an injury received while going to or coming from work by means of a conveyance furnished by the employer as an incident of the employment and in pursuance of the contract of hire arises out of and in the course of the employment and is compensable under the Workmen's Compensation, Insurance and Safety Act. But we think the facts of the instant case remove it from any influence of such cases. The injured employees were neither going to nor returning from their work, they lived at the campsite and had been to their abodes, changed their clothes and boarded the train for an excursion of pleasure wholly aside from their duties as employees.' '' It should be noted that in the Graf case the train was under the control of and was being operated by the employer, over a route designated and established by the employer. In the present case the truck was not under the control of the petitioner, but was being operated by an employee in his individual capacity, on a pleasure trip, over an undeveloped area in a desert. At the time of the accident Miss Brown was on a personal venture which was not in the course of, or incidental to, her employment, and her injury was not proximately caused by her employment.

■ The commission contends that Miss Brown's trip to Half Moon Bay was reasonably contemplated by her employment. It was stated in the case of *Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 382, at page 387 [161 P.2d 59]: " 'If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. . . .' '' The commission argues, in substance: (1) The nature of Miss Brown's employment, with all her activities taking place in a fenced area, was such as to require recreation outside the fenced area for reasons of morale and efficiency. (2) The customs and usages of the employment, relative to maintaining the car pool and per-

mitting the employees to use the cars outside Dhahran, show that petitioner considered that recreation outside Dhahran was a part of the employment. (3) The terms of Miss Brown's contract of employment placed all her activities while in Arabia under petitioner's control.

As to the first argument just mentioned, relative to being fenced in, it appears that the "fenced area" was not a small area but extended over a large tract of land. The testimony of Miss Brown indicates that the fence was not visible from the main part of Dhahran. As above shown, there were many recreational facilities in the town, including a swimming pool. It cannot be said that her recreational activities were so restricted that a trip by truck, off the highway, over hazardous desert, and across sand dunes to the unimproved beach at Half Moon Bay, was an incident of her employment.

As to the second argument above mentioned, relative to the "car pool," the petitioner was not performing a contractual obligation in permitting the cars to be used. It appears that Miss Brown could not have obtained a car from the pool, since the women employees were not permitted to drive the cars. As above shown, the car pool was made up of all the vehicles used by petitioner during business hours. The use of a car for pleasure was a permissive use only. The requirement that a driver sign his name and state his destination appears to have been for the purpose of keeping a record of the whereabouts of the vehicles and was not for the purpose of checking the activities of the employees. This is indicated by the fact that only the driver of a vehicle was required to sign his name. Furthermore, it seems that the rule was not strictly enforced. Miss Brown testified, as above shown, that on many occasions the driver was not stopped at the gate (checking station); and that she did not remember whether he stopped at the checking station on the day of the accident.

As to the third argument above mentioned, relative to the contract placing all her activities under petitioner's control, there was no provision in the contract of employment pertaining to recreation or to a car pool or to transportation of employees for pleasure purposes. The employment agreement did state that Miss Brown would be "subject to the instructions of the Management" and that she would be "required to abide by such rules and regulations as may be in effect in the Zone of Operations." Those provisions did not constitute an unusual subjection to authority, and they did not pertain to control over the personal activities of the em-

ployee while she was away from petitioner's premises on a pleasure trip. The provision in the agreement that petitioner reserved the right to summarily dismiss the employee for conduct "which would be detrimental to the best interests of the company, wilful neglect of duties, or for noncompliance with regulations" is not an unusual provision in employment contracts, but is a right that is usually reserved to the employer. It does not appear that the petitioner had given any instruction or had made any rule or regulation regarding recreation. The record does not show that petitioner directed or attempted to direct or control the recreation of its employees.

The award is annulled.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 22, 1949, and respondents' petition for a hearing by the Supreme Court was denied December 29, 1949. Shenk, J., and Carter, J., voted for a hearing.