[S. F. No. 18590.  In Bank.  Aug. 28, 1952.]

LIBERTY MUTUAL INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GLENN W. DAHLER, a Minor, Respondents.

Leonard, Hanna & Brophy and Edmund D. Leonard for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger, Robert Ball, Leonard Levy and Stanley P. Mamalakis for Respondents.

SPENCE, J.—Petitioner seeks to annul an award of the Industrial Accident Commission in favor of the injured employee Glenn W. Dahler. It maintains that the injuries did not arise out of, nor were they incurred in the course of, the employment, and that therefore they are not compensable under the Workmen's Compensation Act. (Lab. Code, § 3600, subds. (b), (c).)

There is no dispute as to the facts. The North Fork Association, a sportsmen's club, owned a large recreational area in the Sierra. In a portion of this area, it maintained a summer resort, "The Cedars," for the exclusive use of its members, their families and guests. Located in the resort area were some 25 cabins owned by the members, as well as a store and restaurant operated as a concession by Swafford and Company, the employer here involved.

Dahler, a college student, was hired by Mr. Swafford to work at the concession during the summer as a dishwasher and helper. As his duties were discussed at that time, he would be required to serve breakfast and dinner and to open and operate the store a couple of hours in the morning. He was to receive $35 per week, plus room and board. He began his work at the resort on June 27, 1950. He had no definite hours of employment but followed a daily routine established by Swafford when the latter was on the premises

for a few days to arrange for the concession's opening for business on July 1. Upon this basis Dahler started work at 7:30 a. m. cleaning the trays for breakfast, which was served at 8 a. m.; then he washed dishes until about 10 a. m.; and from 10 or 10:30 a. m. until noon he worked in the store filling orders. He usually ate lunch between 12 and 1 p. m., and then he would return to the work of washing dishes and cleaning the dining room, finishing these chores between 2 and 3 p. m. Normally he would have no further work to perform until 5 p. m., when he would begin drying trays and serving salads for the evening meal, wash the dinner dishes and then clean the dining room, completing this work about 10:30 p. m. Once each week in the afternoon when a truck would come with groceries, he would unload the supplies and stock them in the store after he finished his dining-room work in the afternoon. Occasionally in the afternoons he would deliver goods from the store to the cabins of club members. He also had the duty of delivering telephone messages to the members at their cabins. There were only three employees regularly stationed at the resort in connection with the operation of the concession: Dahler, the cook Robinson, and the cook's wife. Robinson was in charge and supervised Dahler's work, but the latter's routine followed the pattern fixed by Swafford.

On the association's property but not on the portion occupied by the concession was a stream with a dam built across it. The pool, which was created by the dam and was used for swimming, was some 10 blocks distant from the restaurant and some 7 or 8 blocks beyond the cabins. Dahler had not been told that he could or could not go swimming in the stream but it was just "more or less taken for granted" that he could. He had swum there on several occasions, the first time being on July 3, when he told Swafford that he was going swimming in the afternoon during his free hours and Swafford did not object. When he had free time, Dahler could also have gone fishing or hiking, which were other recreational activities available in the area. Dahler had been furnished a cottage immediately adjacent to the store, which cottage was fitted with all the necessary sanitary facilities so that his swimming in the stream was not necessary for cleansing purposes.

The injuries in question occurred on July 19. On that day Dahler finished his early afternoon work about 3 o'clock. He then went to the dam to swim, as a matter of personal

pleasure during his free time. He swam, sun-bathed, and undertook to show a girl how to swim. He then proceeded to dive into the stream from some rocks some 3 feet above the water level, when he struck a mudbank beneath the surface and suffered a severe injury.

On this evidence the commission found that Dahler "sustained injury *arising out of and in the course of the employment . . . while diving into a pool on the employer's premises,*" and made its award accordingly. (Emphasis added.) Respondents concede that the place of injury, the swimming-pool, was not on the employer's premises and therefore that portion of the finding is erroneous. However, there still remains the question of whether Dahler's injury is compensable as arising out of and in the course of the employment.

■ Our Workmen's Compensation Act has been broadly construed to embrace various activities which can, in a reasonable sense, be included within its coverage as incident to the employment. So it was said in *Employer's Liability Assurance Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567, at pages 573-574 [99 P.2d 1089]: "If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee." (Also *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 514 [159 P.2d 625]; *Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 382, 387-388 [161 P.2d 59].) But in adhering to the policy of liberal construction of the act, it nevertheless does not appear possible to stretch its broad purpose to cover a case such as this.

■ The record indisputably establishes that Dahler was injured while diving and swimming solely for his own pleasure in a stream off his employer's premises and on his free time during a work interlude in midafternoon. It is true that the employment may be said to have contemplated that Dahler would engage in some recreational activity during his free time if he so chose—whether it be swimming, sun-

bathing, fishing, hiking or any other recreational pursuit available in the general area. But that consideration alone would not constitute every recreational activity chosen by Dahler a part of his compensation under his contract of employment nor make the injury compensable as arising out of and in the course of the employment. There is no evidence that at the time of hiring Dahler, anything was said about his participation in any available recreational activities nor even mention made of the stream; or that Dahler after starting his employment, ever discussed with either Swafford or Robinson, the cook, whether he could or could not swim in the stream. It does appear that when Dahler told Swafford and Robinson on different occasions of free time that he was going to swim in the pool, neither offered any objection. But neither was in a position to object, for the pool was located several blocks beyond the cabin and concession area of the resort where Dahler worked and on property over which Swafford had no control.

██ "There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury." (*California Casualty Indem. Exchange* v. *Industrial Acc. Com.*, 190 Cal. 433, 436 [213 P. 257].) ██ The mere fact that Dahler as Swafford's employee had permissive use of the recreational area beyond the employer's premises does not give rise to blanket protection under the compensation law. Rather, Dahler's swimming activities, unrelated to the employment, remote from his place of work and its risk, pursued as an off-duty personal diversion in the employee's free time, in an area beyond the dominion and control of his employer, and yielding neither advantage nor benefit to the employer, must be held to have been wholly without the compass of the compensation law. (*Arabian American Oil Co.* v. *Industrial Acc.·Com.*, 94 Cal.App.2d 388, 392-393 [210 P.2d 732].)

Clearly distinguishable are the cases cited by respondents to the effect that employees sustaining injury while engaged in the performance of personal acts reasonably and necessarily contemplated by the employment come within the protection of the compensation law. For example of these cases, see *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625], where two employees were drowned in a reservoir on the employer's premises incident to its use as a washing facility furnished by the employer for cleansing

purposes after the day's farm labor; and *Employers' Liability Assurance Corp.* v. *Industrial Acc. Com., supra,* 37 Cal.App.2d 567 [99 P.2d 1089], where the employee, a household servant, was required to live on the employer's premises, received her board and room as part of her compensation, and was on call by her employer at the time of her injury, which resulted from a fall from a stool on which she was standing in her own room to see better in the mirror the hem of her dress which she was attempting to check.

It is true, of course, that there are other instances where the employee's recreational activity has been held to be so related to the employment that a resulting injury was deemed to be one arising out of and in the course of the employment. Such are the cases cited by respondents: E.g. *Piusinski* v. *Transit Valley Country Club,* 283 N.Y. 674 [28 N.E. 2d 401], where the claimant was injured on the employer's property, a golf course on which he worked as a caddy, and it appeared that the game in which he was hurt was a recreational activity supervised by the caddy master as a representative of the employer and encouraged as practice play for the caddies because it "tended to make them more efficient caddies"; and *Dowen* v. *Saratoga Springs Com.* (1944), 267 App.Div. 928 [46 N.Y.S.2d 822], where the claimant, a locker boy, who was given permission to use a swimming pool maintained by his employer in connection with its business and upon the premises where he worked, was hurt during his recreational hour as the result of a fall from a ladder leading to a diving-board from which he intended to dive into the pool, and the injury was held compensable upon citation of the Piusinski case. In such circumstances where the employee was injured on the employer's premises, where he was making permissive use, as contemplated by the contract of employment, of the premises and equipment of the employer used in the conduct of its business, and where the recreational activity was conceivably of some benefit to the employer, the compensation award was sustained as incidental to the employment.

In the present case, the only inference which can reasonably be drawn from the evidence is that Dahler's injury occurred while he was engaged in a personal recreational activity on his own free time in an area without the orbit of his employment and beyond the control or dominion of his employer. Under such circumstances, it cannot be said that the injury was sustained in the course of or incidental

to his employment, or that it was proximately caused by the employment. (*Arabian American Oil Co.* v. *Industrial Acc. Com., supra*, 94 Cal.App.2d 388, 393 [210 P.2d 732].) Respondents' theory of compensation rests on the imposition of liability arising solely from the mere existence of the employment relationship and permits of no logical limitation, for carried to its conclusion, it would include any injury as a compensable claim if it occurred in pursuance of any recreational activity available in the general area regardless of connection with the employment. That view of the law would do violence to the express provisions of the Workmen's Compensation Act, which require that all compensable injuries arise out of and in the course of the employment. (*Torrey* v. *Industrial Acc. Com.*, 132 Cal.App. 303, 306 [22 P.2d 525]; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 27 Cal.App.2d 499, 502-503 [81 P.2d 572]; *Arabian American Oil Co.* v. *Industrial Acc. Com., supra*, 94 Cal.App.2d 388, 392-394 [210 P.2d 732].)

The award is annulled.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

The opinion prepared by Mr. Justice Bray of the District Court of Appeal and concurred in by Mr. Presiding Justice Peters and Mr. Justice Fred B. Wood of that court, ably sets forth the facts and applicable law. I adopt it as my dissent:

"Petition to review an award of the Industrial Accident Commission. The sole issue is whether the injury arose out of and was incurred in the course of employment.

### FACTS

"There is practically no conflict in the evidence. The North Fork Association, comprised of persons enjoying the great out-of-doors, owns a large area in the Sierra. Approximately 25 cabins are owned by the members and are located in a portion of the area having a radius equal to about five city blocks. This area is called 'The Cedars.' In it is located a store and restaurant operated as a concession by Swafford and Company. Glenn W. Dahler, a student at the University of California, was 19 years of age. About June 19, 1950, he was employed by Mr. Swafford for Swafford and Company in San Francisco as a dishwasher and helper.

About all that was said about his duties at that time was that he was to serve breakfast and dinner and open and operate the store a couple of hours in the morning. He was to receive $35 per week plus room and board. His employment started on the 26th when he went in Swafford's truck with the Swafford and Company cook and her husband to The Cedars. They arrived late that night. On the morning of the 27th, he helped clean the grill (the restaurant) and apparently worked around it until July 1st when it opened for business. It was patronized exclusively by the members of the North Fork Association, their guests and the employees of the members. Mr. Swafford was present the first two or three days the grill opened. Glenn's duties started about 8 a. m. when he helped serve breakfast, except on days when the trays were dirty, when he started at 7:30 and cleaned the trays. After breakfast he washed dishes. About 10 or 10:30 he opened the store and filled orders until 12. If patrons wanted meat he would thaw it out and deliver it in the afternoon. He usually ate lunch between 12 and 1 with the employees of the association. He would then go back to the dishes, clean the dining room and sweep the floor, finishing between 2 and 3. About once a week the truck would come with groceries and he would unload and pack them away after he finished the dining room. If meat had been ordered, he would deliver it at this time also. He would then be free until around 5 when he would get the trays dried and ready for dinner, serve salads, bus dishes and wash them. This would take until about 10:30. Swafford had given him no definite hours to work. Swafford, however, observed the work that Glenn did. The cook's husband, Robinson, was in charge and supervised some of Glenn's duties but Swafford established Glenn's routine. When telephone calls came for members, Glenn would go to their cabins and notify them to go to the telephone in the amusement hall adjoining the grill.

"On the association property, but not on the portion occupied by the employer's concession, a distance of about ten blocks from the grill, was a dam where the members, their guests and their employees and employees of the association swam. Glenn had swum there before, the first time being July 3d. No one had told him he could go swimming there, or that he could not; it was just more or less taken for granted that he could. On one occasion when

Swafford decided not to take inventory, Glenn told him he would go swimming instead. Swafford did not object. During his work at The Cedars, Glenn left camp only three times at the most. One night he went with Swafford to Reno to see the sights, and twice he left camp to get groceries. When he did not have time to go swimming he stayed around the camp. When he had free time he could have gone fishing or hiking. On July 19th, Glenn got through with washing the lunch dishes and getting the dining room in order for dinner around 3 o'clock. He then went to the dam to swim, and for no other purpose. He swam, sunbathed, and attempted to show a girl who was a daughter of a member how to swim. He then dove off around two and a half to three feet from the steep rocks into the water, which at that spot was about four feet deep. A girl was standing about where he dove as he had asked her to do so as to show the depth. He struck a mudbank or something. He could not move his body and he was pulled out by the girl. He received severe damage to his spinal cord.

"On this evidence the referee made a finding that Dahler 'sustained injury arising out of and *in the course of the employment . . . while diving into a pool on the employer's premises.*' (Italics added.)

## Was Swimming at the Dam Contemplated In the Employment?

"Respondents concede that the place of injury, the pool, was not on the employer's premises and hence that portion of the finding is erroneous. This, however, does not end the case. The question left to be determined is whether swimming at the dam was reasonably contemplated in the employment of Glenn, and therefore the injury arose out of and in the course of that employment. It is apparent from the record that at the time Glenn was hired by Swafford very little was said about his duties, and that what he was to do was determined in large part by what he was told to do by Swafford and Robinson at the camp, and what all took for granted he did without his being expressly directed. He was confined rather closely to camp and his leisure time was quite restricted. A reasonable inference from all the facts and circumstances is that it was contemplated as a part of his employment that he was to receive, besides his pay, room and board, the right to swim at the dam. This was the recreation he was expected to take as the time element did not permit him any

form which would take him away from camp. While 'camp' was generally considered to be the area occupied by the homes of the members, a reasonable inference from the evidence is that it also included the dam where everyone at The Cedars went to swim.

"The inferences above mentioned are not compelled by the circumstances nor are they the only ones that could be drawn therefrom. However, they are reasonable ones and under the well known rule, where different inferences may reasonably be drawn from the facts, we are bound by the determination thereof by the commission.

### AUTHORITIES

"The parties have not cited, nor have we found, any case where the facts were identical with those in the case at bar. The nearest case factually is *Dowan* v. *Saratoga Springs Com.* (1944), 267 App.Div. 928 [46 N.Y.S.2d 822]. There, locker boys, during their lunch hour and after working hours, when accommodations were not crowded, were given permission to use the swimming pool maintained by the employer in connection with its business and upon the premises where the boys were employed. One of the boys, during his recreation hour, was climbing a ladder leading to a diving board from which he intended to dive into the pool. He slipped and was injured. The State Industrial Board ruled that he was entitled to compensation under the Workmen's Compensation Law. The court affirmed the award. There, of course, the injury occurred on the employer's premises. In our case it was off his premises. This distinction, however, is not important. If the recreation facilities are provided *as a part of the employment,* it could make no difference whether they were on or off the employer's premises or were or were not owned by the employer.

"A case illustrating the principle applied by the commission, although the facts are stronger than in our case, is *Piusinski* v. *Transit Valley Country Club,* 283 N.Y. 674 [28 N.E.2d 401]. There the claimant was employed by the club as a golf caddy. He and the other caddies were encouraged to play golf on the club's course each Monday under the supervision of a caddy master, not only for their own amusement, but because the practice tended to make them more efficient caddies. Claimant was injured while engaged in such a practice game with the other caddies. The court supported the finding of the commission that the injury arose out of and in the course of the employment.

"While the facts are somewhat different, it is difficult to distinguish the ruling in *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089], from that of the commission here. There the employee, hired as a cook, was required to live at her employer's residence, and, as part of her compensation, received her room and board. On what was normally her 'day off,' the maid had left, so she worked until 11 or 11:30 a. m. She then told her employer that she would return early that evening to wash the dishes. A little before 8 p. m. she returned. She put an apron over her street dress and washed the dishes. She then retired to her room. She was then on call to answer the telephone or the doorbell, and was expecting her employer to call her to take care of the child. While waiting, she noticed that her dress was a little long. The mirror was not adjustable. To observe more clearly the hem of the dress she stood on a stool. While shortening the dress, she slipped and fell, sustaining injuries which the commission found occurred in the course of and arose out of her employment. After pointing out that where an employee is required to live on the employer's premises, any injury received while the employee is making a reasonable use of said premises is in the course of the employment, even though received during the employee's leisure time, the court states that the only debatable question is whether the injury could be said to have arisen out of the employment. It then stated (p. 570): 'The mere fact that the employee was engaged in performing a personal act when injured does not, *per se,* determine that the injury did not arise out of the employment.' It refers to a number of cases in which the employee was engaged in performing a personal act when injured, and such act was held to arise out of the employment, such as *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754], where a messenger was struck by an automobile while returning to his place of employment from his home where he had gone to get his overcoat; *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], where an employee had injured his hand while working for his employer and later, while lighting a cigarette, set fire to the bandage which had been soaked in turpentine; *Martin* v. *Lovibond & Sons*, 7 B.W.C.C. 243, where a drayman was required to work from 8 a. m. to 9 p. m.; during that time he took no meals at home; he left his team at the side of the street and crossed over to

refresh himself at a pub with a glass of beer; he was there about two minutes and on returning across the street was killed by an automobile; *Thomas* v. *Proctor & Gamble Mfg. Co.*, 104 Kan. 432 [179 P. 372, 6 A.L.R. 1145], where an employee was injured while at play during the noon hour. The court refers to Campbell's Workmen's Compensation, vol. 1, pp. 199-202, for a long list of situations where the employee was allowed compensation while performing purely personal acts. It refers to the cases from other states collected by Campbell which show a contrary rule but points out that they are in states which have a doctrine of strict construction of compensation acts, and that such doctrine has never been adopted in this state. It then holds that the theory of the cases which it approved, as well as the one upon which it decided the case, is that the employee, when injured, was engaged in doing something he might reasonably have been expected to do while in the performance of his duty, or something which was reasonably contemplated by his employment. 'If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee.' (Pp. 573, 574.)

"In *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625], two boys, Thomas and Adolfo, with other members of their family, were employed as grape pickers on a piecework basis. After working all morning one Saturday they quit at noon, as did all the other pickers. Accompanied by their sister and two friends, fellow workers, they went by automobile to their home, some few miles distant from the camp supplied by the employer to most of his employees, to pick up their work cards, which showed their earnings for the week. They had been told that they would get their pay at the office after 1 p. m. About 12:40 they stopped at an irrigation reservoir located on the employer's property to wash their hands, faces and feet, as they were 'dirty.' They then intended to go to the office

for their pay. Adolfo and one of the other boys had finished their ablutions and were standing by the automobile, when Thomas, then in the reservoir and unable to swim, called for help. Adolfo and the other boy plunged into the reservoir to rescue Thomas. They were unsuccessful. The other boy, with the aid of a woman, managed to pull himself out, but both Thomas and Adolfo were drowned. The reservoir was used regularly for washing after work by all the grape pickers, and many of them went swimming there. The commission found that the deaths arose out of and occurred in the course of their employment. The court upheld the finding of the commission. The following excerpts from the opinion in that case apply to our case: 'In considering the problem of the compensable nature of the deaths in question, it must be remembered that the reviewing court is not to determine the weight to be given the evidence [citations] or which of two opposing inferences should be drawn therefrom. [Citations.] A review of the record in the light of these principles of law sustains the commission's findings and awards.' (Pp. 512, 513.) 'Whether a given accident is so related or incident to the work in which the employee is engaged depends upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. [Citations.] The question is, of course, primarily one for the commission to determine.' (P. 516.) The contention was made that there was no causal connection between the employment and the death of Adolfo. He had finished his ablutions and was standing by the automobile when he heard his brother and coemployee Thomas cry for help. Adolfo was drowned in the attempted rescue. The court held that the death was of an industrial nature and compensable. A somewhat similar situation occurred in *O'Leavy* v. *Brown-Pacific-Maxon, Inc.*, 340 U.S. 504 [71 S.Ct. 470, 95 L.Ed. 483], although in the latter case the death occurred off the employer's premises. The employer was a government contractor operating on the island of Guam. It maintained for its employees a recreation center near the shoreline, along which ran a channel so dangerous for swimmers that its use was forbidden, and signs to that effect erected. John Valak, the employee, spent the afternoon at the center and was waiting for his employer's bus to take him from the area, when he heard two men, standing on the reefs beyond the channel, signaling for help. Followed by nearly twenty others, he plunged in to effect a rescue. In

attempting to swim the channel to reach the two men he was drowned. On a claim filed by his dependent mother under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq., 33 U.S.C.A. § 901 et seq.) the commissioner found as a 'fact' that the death arose out of and in the course of the employment. The Court of Appeals for the Ninth Circuit reversed this finding, on the ground that the lethal currents were not a part of the facilities supplied by the employer and that the attempted rescue was neither for recreation nor was it in the course of the employment. The Supreme Court, with a dissent by three justices, reversed the decision of that court, and held that, while the facts did not compel, they supported an inference that the death was fairly attributable to the risks of the employment. It pointed out that an application of the act which 'precluded an award for injuries incurred in an attempt to rescue persons not known to be in the employer's service, undertaken in forbidden waters outside the employer's premises . . . is too restricted an interpretation of the Act. Workmen's compensation is not confined by common law conceptions of scope of employment.' (P. 471 [71 S. Ct.].) 'The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. *Thom* v. *Sinclair*, (Eng.) [1917] A.C. 127, 142 [Ann.Cas. 1917D 188]. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the ''obligations or conditions'' of employment create the ''zone of special danger'' out of which the injury arose.' (Pp. 471, 472 [71 S.Ct.].) Applying to the facts of our case the test as set forth in *Employers' etc. Corp.* v. *Industrial Acc. Com., supra,* 37 Cal.App.2d 567, and in the cases above mentioned, raises an inference that the employment of this young college student contemplated that in addition to his pay, board and room, he was to use as an incident of that employment the swimming facilities provided by the association for its employees, and which Swafford's employees had the right to use. Actually, Glenn's right to use the pool was by resaon of his *distinct status* as an employee and as an incident of his employment. (See *Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 509, 515.)

"Petitioner contends that the fact that the place of injury was off the employer's premises is controlling, quoting from *Makins* v. *Industrial Acc. Com.,* 198 Cal. 698 [247 P. 202,

49 A.L.R. 411], and that for the same reason the so-called 'bunkhouse rule' does not apply. However, the place of injury is not the criterion. (See *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40 [112 P.2d 615].) It is, whether the act of the employee when injured is reasonably contemplated by the employment.

"There are a number of jurisdictions where the rule of strict interpretation of Workmen's Compensation Acts prevails, the cases from which support petitioner's contentions. But as that rule does not prevail in California, it is unnecessary to discuss them. *Graf* v. *Montecito County Water Dist.*, 1 Cal.2d 222 [34 P.2d 138], is easily distinguishable on the facts from our case. There, the injured employees 'were neither going to nor returning from their work, they lived at the campsite and had been to their abodes, changed their clothes and boarded the train [belonging to the employer] for an excursion of pleasure wholly aside from their duties as employees' (p. 225). Moreover, the court stated that the record failed to show the exact terms of the employment, and there was no evidence that transportation was promised the employees as a part of their contract, and hence nothing in the record to support the petitioner's contention that riding on the train was incidental to the employment. Moreover, the case was decided in 1934. The dissenting opinion of Shenk, J., to the effect that the train ride was incidental to the employment more nearly represents the Supreme Court's attitude today. Nor is *Torrey* v. *Industrial Acc. Com.*, 132 Cal.App. 303 [22 P.2d 525], in point. There, the employee went to a picnic ground to discuss business with a coemployee. The latter invited him to go for a motorboat ride. The boat turned over and both men were drowned. The commission held that the death did not occur in the course of employment. The court upheld this determination, holding that the business of the employer was either concluded, or postponed at the time of the boat ride and that the evidence failed to show that the employee went on the boat ride for any purpose other than his personal pleasure. The court refers to the fact that adverse as well as favorable inferences may be drawn from the petitioner's evidence. It may well have been that had the commission drawn an inference to the effect that business was to be discussed during the five-minute boat ride, the court would have upheld such action of the commission. In that case, differing from ours, there was no finding that the interlude of pleasure

was an incident of the employment. This same factor is the distinction between our case and *Langendorf United Bakeries, Inc.* v. *Industrial Acc. Com.*, 6 Cal.App.2d 46 [43 P.2d 1106], *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 27 Cal.App.2d 499 [81 P.2d 752], *Red Arrow etc. Corp.* v. *Industrial Acc. Com.*, 39 Cal.App.2d 559 [103 P.2d 1004], and others cited by petitioner.

"In *Roberts* v. *Means*, 146 Pa.Super. 188 [22 A.2d 98], a boy employed at a hotel to carry bags and rent boats on the shore of a lake, was drowned while diving from a boat which after his day's work and after his supper he had rowed out on the lake. The court held that under the evidence he was using the boat solely for his own pleasure. While the boy had been given permission by the employer to swim from the wharf, if his employer was present, he had been forbidden to go out in a boat under penalty of losing his job. Obviously there is no similarity with the facts in our case. The court also held that the boy's injury occurred off the employer's premises but pointed out that this fact would not be conclusive had the appellant met the burden of showing that the injury occurred in the course of the employment.

"In *State Young Men's C. Assn.* v. *Industrial Com.*, 235 Wis. 161 [292 N.W. 324], Kregel, a medical student, was employed as a counselor to assist the first aid medical director of a Y.M.C.A. summer camp. He was subject to call on his free time, and hence he was usually within the camp area. He was paid a salary and room and board. When not actually occupied he was privileged to use the camp recreational facilities including the tennis courts. While engaged in a game of tennis with other counselors he was struck in the eye by a tennis ball, causing the injury for which he sought compensation. In reversing the lower court, which had confirmed an award of the Wisconsin Industrial Commission, the Supreme Court acted on the theory that his play was purely voluntary on his part and was in nowise for the benefit of his employer. The theory of the case is that 'there is no evidence that at the time the injury was received the claimant was engaged in any work for his employer.' (P. 326 [292 N.W.].) In California the right to compensation by an employee is not limited to injuries received while actually engaging in the employer's work.

"The facts in *Aetna Casualty & Surety Co.* v. *Fulmer*, 81 Ga.App. 97 [57 S.E.2d], cited by petitioner, are so dis-

similar to those in our case as not to require comment. It, *Brynwood Land Co.* v. *Industrial Com.*, 243 Wis. 380 [10 N.W.2d 137], and *Mishawaka Rubber & Woolen Mfg. Co.* v. *Walker*, 119 Ind.App. 309 [84 N.E.2d 897], applied the well known rule that an injury sustained by an employee while engaging in recreational activity for his own amusement is not compensable. None of them considers the situation where, as in our case, the place and type of recreation is provided by the employer as an incident of the employment.

"Petitioner cites *Pacific Indem. Co.* v. *Industrial Acc. Com., supra*, 27 Cal.App.2d 499, for the proposition that 'the mere fact of employment and permission to use the premises of the employer does not give rise to a right to compensation under the Workmen's Compensation Act . . . for an injury resulting to an employe.' (P. 503.) There, the claimant was injured while attending a union meeting in a room on the employer's premises, which the employer had expressly agreed with the union committee might be used for that purpose. In denying compensation, the court points out that not only was the employee not engaging in any business for her employer, but for aught that appears, the meeting may have been held for purposes antagonistic to her employer. There can be no quarrel with the principle above mentioned. Our case, as herein shown, does not depend upon that principle."

"The award is affirmed."

For the reasons above stated, I would affirm the award.