[L. A. No. 5751.   In Bank.—October 11, 1919.]

## STARR PIANO COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1]   WORKMEN'S COMPENSATION ACT—INJURY IN SEEKING ENTRANCE TO PLACE OF EMPLOYMENT—RIGHT TO COMPENSATION.—Under the Workmen's Compensation Act, it is not necessary in order to entitle the employee to compensation that at the time of the accident he

CLXXXI Cal.—28

have reached the place of employment and have actually begun there to render service, but it is sufficient if he has come to the employer's premises and is seeking entrance thereto by a means of access provided by the employer or reasonably used by the employee.

[2] Id.—Injury on Way to Work—Right to Compensation.—Under the Workmen's Compensation Act, an injury is not sustained in the course of employment, where the employee is merely on his way to work and is injured.

[3] Id.—Injury to Employee of Tenant of Building—Use of Elevator on Way to Work—Control of Elevator by Owner—Right to Compensation.—Under the Workmen's Compensation Act, the employee of a company, which rented space in a building, and and who was hurt by falling into the elevator shaft in an attempt to use the elevator on his way to perform services for his employer, was entitled to compensation, although the elevator was controlled by the owner of the building.

[4] Id.—Use of Elevator on Sunday—Absence of Operator—Right to Compensation Unaffected.—An award of compensation for such an injury is not to be held invalid, on the theory that the injury did not arise out of the employment because the employee was injured, when, by means of a key surreptitiously obtained, he had entered the building on a Sunday, when it was closed, and was proceeding without authority to run the elevator in the absence of an operator, where it was shown that the employee was a traveling salesman, who was not held to regular hours at a particular place, but was expected at times to work evenings and on Sundays, that he was in the building on business of his employer at the time of the injury, that other tenants had keys to the building, that both employer and the agents of the building had knowledge of the possession of the key by the employee, that he was in the building frequently on evenings and Sundays, and also that the tenants were permitted to use the elevator themselves.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander and Griffith R. Williams for Petitioners.

A. E. Graupner, Warren H. Pillsbury, Christopher M. Bradley and Hugo D. Newhouse for Respondents.

OLNEY, J.—The petitioners seek the annulment of. an award by the Industrial Accident Commission in favor of respondent Steinkamp.  Steinkamp was in the employ of the petitioner, Starr Piano Company, which rented space on the fourth floor ·of the Manufacturers' Exhibition Building in San Francisco.  He was hurt by falling into the elevator shaft of the building in an attempt to use the elevator on his way to the fourth floor, there to perform services for his employer.  The elevator was one solely under the control of the owner of the building; and maintained and operated for the common use of all the tenants and so used.  The only question is as to whether or not the accident by which Steinkamp was injured was one "arising out of, and in the course of, his employment," as prescribed by the Workmen's Compensation Act.  [Stats. 1917, p. 831].  Two reasons are advanced by the petitioners why the accident was not of this character.

The first reason is that at the time of the accident Steinkamp had not yet reached his place of employment, but was merely on his way there and, accordingly, had not yet entered upon his employment.  [1]  On the one hand, it is not doubted that it is not necessary, in order to entitle the employee to compensation, that at the time of accident he have reached the place of employment and have actually begun there to render service.  It is sufficient if he has come to the employer's premises and is seeking entrance thereto by a means of access provided by the employer or reasonably used by the employee.  A typical, if not the leading, case of this character is *Moore* v. *Manchester Liners, Ltd.,* 3 B. W. C. C. 527, where compensation was allowed for the death of a fireman employed on a steamer, who was drowned while returning to his ship from a personal errand of his own, by falling from a ladder provided for the purpose of access from the quay to the ship.

[2]  On the other hand, it is not doubted that if the employee is merely on his way to his employment and is injured, the injury is not one sustained in the course of his employment.  A typical case of this sort is *Ocean Acc. Co.. v. Industrial Acc. Com.,* 173 Cal. 313, [L. R. A. 1917B, 336, 154 Pac. 1041], where it was held that compensation could not be awarded for the death of a seaman drowned while seeking to make his way over a wharf and across other vessels to his own

ship. In the latter case the authorities dealing with these two classes of cases and making the distinction between them are reviewed at length.

The question here is under which of these rules does an accident come which is suffered by an employee on the way to his employment, and when he has reached the building in a part of which his employer's premises, so to speak, are located, and when he is using a means of access, such as stairs or an elevator, supplied by the owner of the building, as distinct from the employer, for the common use of all the tenants of the building, of whom the employer is but one. This question may be solved, we believe, by means of an approach to the facts of the case from the facts of those in which, as we have said, it is undoubted that an award of compensation is proper.

Under the rule first stated, if the employer were the owner of the building and the employee were injured on the elevator or stairs in reaching his place of work on a certain floor, it cannot be doubted that compensation is payable under the statute. The employee has reached the employer's premises and is using a means of access specially provided for that very purpose. It would seem to follow that if the employer did not own the building but rented it all, compensation would still be payable, even though the employer did not operate or control the elevator, or have the control or care of the stairs, but such operation, control, and care remained with the owner of the building. The operation, control, and care of the elevator and stairs in such a case would seem to be a matter wholly between the employer and the owner of the building. It would not enter as between employer and employee and would be entirely extraneous to the employment. As to the employee it would be a matter of indifference whether the elevator or stairs necessary for access to the spot where he is to work are by the employer's lease operated and controlled by the latter or by the owner of the building, provided only that they are in fact furnished so that access by the employee may be had. There would seem to be no reason for allowing compensation where the employer controls the elevator, for instance, and refusing it where he does not, when the fact as to who controls it is extraneous to the employment and the theory upon which compensation is now allowed under the Workmen's Compensation Act is not, as

before, that the employer, either directly or through some agency or instrumentality under his control, has been guilty of some breach of duty toward the employee. So far as the employee is concerned, the elevator or stairs are a special means of access furnished him to get to his place of work, and, in effect, furnished him by his employer. **[3]** By the lease the tenant has the right as an appurtenance of the premises leased to the use of the elevator or stairs for the purposes of access, and, so far as the tenant's employees are concerned, the elevator and the stairs are, in effect, a part of the employer's premises. (See *Judson Mfg. Co.* v. *Industrial Acc. Com., ante,* p. 300, [184 Pac. 1].)

Nor is the situation in this respect changed by the fact that the employer is but one of several tenants, all of whom have the right to the use of the elevator and stairs. The right to their use still remains an appurtenance of the employer's premises, the only difference being that the right is now one enjoyed in common with others instead of exclusively. The essential thing, that the elevator and stairs are in effect a part of the employer's premises covered by his lease, still remains.

A decision directly in point is *In re Sundine*, 218 Mass. 1, [L. R. A. 1916A, 318, 143 N. E. 433], where an employee, going from her place of work for lunch, was injured upon the stairs of the building in which the employers leased a floor. Upon the point under discussion the court said:

"Nor do we regard it as decisive against the petitioner that she was injured while upon stairs of which neither Olsen nor F. L. Dunne and Company had control, though they and their employees had the right to use them. These stairs were the only means available for going to and from the premises where she was employed, the means which she practically was invited by Olsen and F. L. Dunne and Company to use. In this respect, the case resembles *Moore* v. *Manchester Liners, ubi supra;* and that case, decided under the English act before the passage of our statute, must be regarded as of great weight. (*McNichol's Case*, 215 Mass. 497, 499, [L. R. A. 1916A, 306, 102 N. E. 697].) It is true that before the passage of Statutes of 1911, chapter 751, the petitioner could not have held her employer for this injury. (*Hawkes* v. *Broadwalk Shoe Co.*, 207 Mass. 117, [92 N. E. 1017].) But that now is not a circumstance of much importance; for one of the purposes of our recent legislation was to increase the

right of employees to be compensated for injuries growing out of their employment.

"It was a necessary incident of the employee's employment to use these stairs. We are of opinion that according to the plain and natural meaning of the words an injury that occurred to her while she was so using them arose 'out of and in the course of' her employment."

The present case also comes within the language at least of *Nelson etc. Co.* v. *Industrial Com.*, 286 Ill. 632, [122 N. E. 113], to the effect "that it makes no difference that the injury occurred off the premises of the employer, if the employee were using premises which he had a right to use and which provided the only available way to reach the point to which he was going for lunch."

The language in *De Constantin* v. *Public Service Com.*, 75 W. Va. 32, [83 S. E. 98], is too broad if it was intended thereby to include injuries sustained on a public road or way, but the fundamental idea is sound when applied to a private means of access appurtenant, so to speak, to the employer's premises. The language is: "Since injury after termination of actual work, while on the premises of the employer and in pursuit of the usual way of leaving the same, is held to be within the course of employment and to have arisen out of the same, it seems clear that an injury to a workman while coming to his place of work on the premises of the employer and by the only way of access, or the one contemplated by the contract of employment, must also be regarded as having been incurred in the course of the employment and to have arisen out of the same. If, in such case, injury does not occur on the premises, but in close proximity to the place of work and on a road or other way intended and contemplated by the contract as being the exclusive means of access to the place of work, the same principle would apply and govern. If the place at which the injury occurred is brought within the contract of employment, by the requirement of its use by the employee, so that he has no discretion or choice as to his mode or manner of coming to work, such place and its use seem logically to become elements or factors in the employment, and the injury thus arises out of the employment and is incurred in the course thereof." (See, also, *Nole* v. *Wadsworth*, 6 B. W. C. C. 129.)

The second contention of the petitioners is that the injury to Steinkamp did not arise out of his employment because he was injured when by means of a key surreptitiously obtained he had entered the building on a Sunday when it was closed, and was proceeding without authority to run the elevator himself in the absence of an operator.   In our former opinion the award was held invalid on this ground.   A rehearing was granted, not because of any doubt as to the invalidity of the award upon such a state of facts, but because of doubt as to whether the commission was not justified in finding a different state of facts.   A re-examination of the evidence has satisfied us that the commission was justified in so finding.

The home office of the Starr Piano Company is in Los Angeles.   Steinkamp was employed by it as traveling salesman and its San Francisco representative and to take charge of its exhibit in the building where the accident occurred.   He had both the freedom and the responsibility incident to his position as local representative.   He was not held to regular hours at a particular place, but was supposed to give as much time as was required to discharge his duties efficiently, and it was expected of him that he would at times work evenings and on Sundays.   This, in effect, was testified to by the secretary and·treasurer of the Piano Company.   It further appears that at the time when the Piano Company, through its secretary, was arranging to rent its space in the building, Steinkamp brought up the matter of his being permitted to use the building evenings or Sundays and the agent of the building told the secretary and Steinkamp that while the building was not ordinarily used evenings or Sundays, it could be arranged that Steinkamp might do so if necessary.. Steinkamp did work frequently in the building evenings and Sundays and the evidence shows that this was known both to his employer and the agents of the building.   On the Sunday when he was hurt, he was in the building to attend to some business for the Piano Company.   Being there for that purpose, it follows from the facts just previously stated that he was legitimately there in the course of his employment, although there out of business hours and when the building was closed.

This would hardly be questioned were it not for the manner by which he effected an entrance.   He obtained entrance

by means of a key which he had had made from one loaned him temporarily by a representative of the building after he had been refused a key by another representative and by the janitor.

But in the first place, assuming that he had the key surreptitiously, the only bearing which that fact would seem to have would be to indicate that he was not in the building legitimately. If he were rightly there, how he got there would seem to be immaterial, since he was not hurt getting there, but afterward. That he was there legitimately hardly admits of serious question upon the other facts already stated.

In the second place, there was evidence sufficient to justify the conclusion by the commission that, no matter how Steinkamp first obtained his key, his continued possession and use of it was not surreptitious. Numerous other tenants had keys and used them. It was no exceptional thing for a tenant to have a key. Steinkamp himself was frequently in the building out of hours to the knowledge of the agents, and when, if he were supposed not to have a key, the question must have occurred to them as to how he had got in. It also appears that after he had been refused a key by the janitor, the latter observed him in the building out of hours and reported that fact to one of the responsible agents for the building, but nothing was said or done about it. The whole course of conduct warrants the conclusion that Steinkamp, having in some manner obtained a key, the agents of the building acquiesced in his retaining and using it.

The remaining questions in the case pertain to Steinkamp's attempt to use the elevator in the absence of the operator. He was hurt in an attempt so to use it, and unless he had authority to do so, he was not using a means of access to his employer's premises then open to him and was not hurt in the course of his employment. Furthermore, authority so to use an elevator cannot reasonably be presumed, but must affirmatively appear.

There were two elevators in the building, both operated by electric power, one a freight elevator, the other a passenger elevator. No operator was supplied for the freight elevator and any tenant desiring to use it either applied to the janitor or was at liberty to operate it himself. On the other hand, an operator was supplied for the passenger elevator, and during business hours at least this elevator was operated by no

one else. When the operator left, the power was left on. Why this was done does not appear. The agents for the building deny that anyone was authorized to use the passenger elevator in the absence of the operator. Whether its method of operation was different from or more difficult than that of the freight elevator, which the tenants were permitted to run, does not appear, but it is a matter of common observation that there are electric elevators which do not require any considerable skill or experience for their operation. As against the general statement of the agents of the building that no one was authorized to use the passenger elevator in the absence of the operator, there is the testimony of Steinkamp that the manager and secretary of the building himself showed Steinkamp how to operate it; that other tenants operated it themselves; that he had operated it himself on several previous occasions, and that no objection to such use had ever been made to his knowledge by the agents of the building. This testimony is corroborated by that of one Nelson, a mechanic employed by the Piano Company to install some phonographic booths. He testifies that on going to the building he was given a key by the manager and secretary and told to use the elevator; that he did use it a number of times; that on one occasion he found the elevator door open and the elevator not there, it having been taken to a floor above by a tenant and that he investigated and found the door was apt to rebound on being closed and reported the matter to the agents of the building. The manager and secretary of the building contradicts Steinkamp's testimony that he showed him how to operate the elevator, but admits that he showed him how to open the door into the elevator compartment. Why he did this, if not in order that Steinkamp might operate the elevator, does not appear.

It is clear that upon the foregoing testimony of Steinkamp and Nelson, taken in conjunction with the other evidence stated, the commission was justified in concluding that, unusual as it might be, Steinkamp and other tenants were in fact permitted to operate the passenger elevator themselves. In fact, the petitioners hardly contend to the contrary. The point on which they rely in this connection is that while Steinkamp may have been permitted by the owners of the building to run the elevator, this fact and the fact that he

was doing so were wholly unknown to Steinkamp's employer and were not acquiesced in by it.  This is true so far as appears.  It is likewise true that acquiescence by the owner of the building in some unreasonable and dangerous use of some appurtenance of the building by an employee of a tenant unknown to the tenant would not be the equivalent of acquiescence by the tenant in such use by his employee.  But in such a case as this, where Steinkamp was largely a free and responsible agent, it must be taken that his employer acquiesced in his use of the building in any reasonable way permitted by the owner of the building.  The award of the commission cannot, therefore, be annulled unless it appear that Steinkamp's using and operating the elevator himself was unreasonable and dangerous.  There is no evidence upon this point, and while it might be said in the case of some kinds of elevators that their use without a skilled and trained operator was unreasonable and dangerous as a matter of common knowledge, it does not appear that the elevator here involved was of that character.  Certainly there are some electric elevators which can be operated with safety by a person without particular experience or skill, and the acquiescence by the owners of the building in the use of this particular elevator by such persons, if the testimony of Steinkamp and Nelson be believed, is some indication that it was of that character.

[4]  It follows that the commission was justified in finding that Steinkamp was not injured in endeavoring to reach his employer's premises by an unreasonable and dangerous means of access which he was not authorized to use, but, on the contrary, that he was injured while legitimately seeking to reach his place of work by a means of access appurtenant thereto and which he was justified in using.  This being the case, it follows that the finding that his injury arose out of, and in the course of, his employment must be sustained.

Award affirmed.

Lennon, J., Wilbur, J., and Lawlor, J., concurred.

SHAW, J.—I dissent for reasons similar to those stated in my dissenting opinion in *Judson Mfg. Co.* v. *Industrial Acc. Com., ante,* p. 300, [184 Pac. 1].  In my opinion the court in these decisions is creating a liability itself and is imposing on

the community and on employers a burden not contemplated or warranted either by the constitution or by the statute.

Melvin, J., concurred.

Rehearing denied.

Olney, J., Lennon, J., Wilbur, J., and Lawlor, J., concurred.

Angellotti, C. J., Shaw, J., and Melvin, J., dissented.