[S. F. No. 16513.   In Bank.—April 30, 1941.]

ASSOCIATED INDEMNITY CORPORATION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and BOYDEN MACFIE, Respondents.

Purvis, Jakobsen & Kennedy and Burbank, Laumeister & Littler for Petitioner.

Everett A. Corten for Respondents.

CARTER, J.—Petitioner seeks annulment of the order of respondent, Industrial Accident Commission, awarding compensation to respondent, Boyden Macfie.

On December 8, 1939, Macfie was in the employ of Parr-Richmond Terminal Company as dock superintendent at Port Costa, California, and at that time he sustained injuries causing temporary total disability for which an award for compensation was made by respondent commission. The sole issue presented for determination by the commission and here presented is whether or not Macfie's injury arose out of and occurred in the course of his employment, petitioner maintaining the negative. ▇▇ In examining the evidence bearing upon that issue we must be guided by the rule that the finding of the commission will not be disturbed by this court unless there is an entire lack of evidence to support it, and that with conflicts in the evidence we are not concerned. (*Drillon* v. *Industrial Acc. Com.*, 17 Cal. (2d) 346 [110 Pac. (2d) 64]; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570].)

Disregarding conflicts in the evidence, the facts appear to be as follows: Macfie had been employed by the Parr-Richmond Terminal Company for a period of over six years prior to the time he was injured. He had been employed at the dock hereinafter mentioned since November 21, 1939. At the time of the injury his employer in the course of its business was in possession of and using a dock at Port Costa, and Macfie was employed as superintendent in charge of that dock. His employer was engaged in the warehouse business and handled freight hauled by the Southern Pacific Company on its railroad. The dock and his employer's office were situated adjacent to the main line right of way of the Southern Pacific Company upon which were several railroad tracks, consisting of switch and main line tracks. About three-quarters or one-half of a mile up these tracks from the dock the Southern Pacific Company maintained a freight depot. The only practicable route of travel between the dock and depot was along and across the railroad tracks, and that route was generally used by the employer's employees. As superintendent, it was Macfie's duty to call at the freight depot in the morning on his way to the dock and obtain any notices that the Southern Pacific Company had received concerning cars of freight to be accepted by his employer, take those notices to the office at the dock, and further to take charge of the cars of freight that had arrived. At about 15 minutes to 8 o'clock on the morning of the accident, in performance of his duty, and as was his custom, he went to the freight depot and obtained the

above-mentioned written notices from the Southern Pacific Company. His regular hours of work were 8 A. M. to 5 P. M., but he usually arrived at the depot about 10 minutes before 8 A. M. Macfie, intending to go down the tracks to take the above-mentioned notices to his employer's office at the dock, requested and obtained permission from a locomotive fireman in the employ of the Southern Pacific Company to ride on an engine of said company which was standing near the freight depot and was about to proceed down the tracks toward the dock. After riding about halfway to the dock on the steps of the engine, the engine stopped and "blew steam" and Macfie stepped off to avoid the steam and in so doing fractured his leg, this being the injury for which compensation was awarded. The accident occurred at about 5 minutes to 8. He had ridden on engines under the same circumstances on prior occasions and it was the practice for other of his employer's employees to ride on the engines, especially at noon from the dock to the depot. His employer had never forbidden such practice. It was Macfie's duty to go to the freight depot at night after leaving his employer's office and leave switching orders for disposal of cars of freight for the night and the following day. On such occasions he did not ride on the engines because it was dark, but walked along the tracks. Macfie, by virtue of his position as superintendent, was authorized to use his discretion in the performance of his duties, he being in complete charge of the dock. The engines were not designed to accommodate passengers. Petitioner introduced evidence to the effect that inasmuch as the fireman on the switch engine had no authority to grant permission to ride thereon, Macfie was a trespasser as to the Southern Pacific Company while riding on the same; and further that there was a path from the depot to the dock along the tracks, as a means of egress and ingress. Macfie testified that he did not know of such path. There was no occasion for the application of the "going and coming" rule in this case because it was conceded by petitioner at the hearing before the commission that Macfie was acting in the course of his employment in going to the freight depot to obtain the notices of arrival of freight and in taking those notices to the office of his employer at the dock, which of course, includes the concession that Macfie had commenced his day's work when he arrived at the freight depot, or at least,

that he was performing work for his employer in going from the freight depot to the dock. Manifestly, that concession is in accordance with the facts above stated. ▓▓ Petitioner claims however that Macfie stepped out of the course of his employment when he rode on the switch engine, and that therefore the injury did not arise out of or occur in the course of his employment; that there was no causal connection between the employment and the injury.

It is apparent from the foregoing facts that Macfie was engaged in the service of his employer when he was traveling from the freight depot to the dock. He was then carrying the notices of the arrival of freight to the dock and was as much engaged in his employer's business as when he performed other duties after arriving at the dock. The only question is then, whether his use of the switch engine as the instrumentality by which to reach the dock, constituted a leaving of the course of the employment or whether the injury arose out of a risk or condition incident to the employment. The finding of the commission that the injury arose out of and in the course of the employment must be sustained.

▓▓ It is fundamental that the rules applicable to a common law action for negligent injury have no application to proceedings for compensation under the workmen's compensation laws. (Lab. Code, sec. 3600; 27 Cal. Jur. 255, 256.) It follows that whether or not Macfie was negligent or assumed the risk when riding on the switch engine cannot be considered as factors in the determination of this case. ▓▓ It is true, as contended by petitioner, that when an employee chooses for his own conveyance a hazardous means (a safe means being provided by the employer for his employees), not customarily used, of entering or leaving his employer's premises, without the acquiescence of his employer, such employee may be said to have stepped out of the course of his employment and any injury occurring under such circumstances does not arise out of his employment. (*Moore & Scott Iron Works* v. *Industrial Acc. Com.*, 36 Cal. App. 582 [172 Pac. 1114].) ▓▓ Also the mere fact alone that the injury occurs while the employee is in the service of his employer is not sufficient to establish liability for compensation. There must be some causal connection between the employment and the injury in the sense that, by reason of the

employment, there was an unusual or additional exposure of the injured employee to the kind or character of hazard and danger which caused the injury. (*California Casualty Indem. Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 Pac. 257].) ■ But in the instant case, riding the switch engines between the freight depot and the dock was customarily done by Macfie and other employees, and such practice was not forbidden by the employer; the only method of travel between those points was along the railroad tracks. Macfie, by virtue of his position as superintendent, had large discretion in the means employed and the manner of performing his duties; such was the testimony of his immediate superior. On the occasion of the injury he had commenced his day's work when he arrived at the freight depot to obtain the notices of the arrival of freight and was acting in the course of his employment in taking those notices to the dock. He had charge of the freight cars, and as an incident thereto, the transfer of the freight arriving on the railroad to his employer's warehouse. From these circumstances it may reasonably be inferred that the employer impliedly consented or authorized him to ride on the switch engine; he would thereby save time and energy in reaching the dock to the advantage of his employer and in advancement of his employer's interests. Further, the facts justify the inference that he was in a legal sense on his employer's premises when he went from the depot to the dock. His duties were to attend to freight arriving and leaving on the railroad and the area necessary for the performance of those duties included the railroad right of way between the depot and the dock. ■ In order that an employee may be considered as upon his employer's premises at the time of the injury it is not necessarily essential that the premises be circumscribed by walls or barriers (*Makins* v. *Industrial Acc. Com.*, 198 Cal. 698 [247 Pac. 202, 49 A. L. R. 411]) ; nor that the same be wholly under the control of the employer. (*Globe Indem. Co.* v. *Industrial Acc. Com.*, 208 Cal. 715 [284 Pac. 661] ; *Judson Mfg. Co.* v. *Industrial Acc. Com.*, 181 Cal. 300 [184 Pac. 1] ; *Starr Piano Co.* v. *Industrial Acc. Com.*, 181 Cal. 433 [184 Pac. 860].) ■ These principles coupled with the circumstances that Macfie and other employees traveled along the railroad tracks and had ridden on the engines before, that he had large discretion in the performance of his duties, and that the employer had not

forbidden its employees from traveling along the railroad track or riding on the engines, furnish sufficient basis for at least concluding that Macfie was on the premises with the consent and approval of his employer, and was performing his duties thereon in going from the depot to the dock. ■ Petitioner contends however that Macfie in riding on the switch engine adopted such an unreasonable and hazardous method of traveling from the depot to the dock that it constituted an abandonment of his employment. It must be kept in mind in this connection that Macfie and other employees had frequently ridden on the engines before, and that Macfie, by virtue of his position had considerable latitude in the manner and means of performing his duties to his employer, and that he was, in legal effect, on his employer's premises and performing his duties when he set out to go to the dock, and that he asked and obtained permission from the fireman to ride on the engine. The doctrine urged by petitioner must be applied with extreme caution for the reason that it is barely distinguishable from the rules of contributory negligence and assumption of risk which are not applicable in compensation cases. Indeed it may well be asserted that the doctrine of "added risk", that is, where an employee assumes a risk greater than that usually incident to his employment, he cannot recover, cannot be followed in California because it is in effect nothing more than contributory negligence. (Campbell, Workmen's Compensation, vol. 1, sec. 238; California Constitution, art. XX, sec. 21.) The circumstances giving rise to the doctrine are pertinent in determining the issue as to whether the injury arose out of or in the course of employment. In *California Casualty Indem. Exch.* v. *Industrial Acc. Com.*, 5 Cal. (2d) 185, 187 [53 Pac. (2d) 758], a traveling salesman was asphyxiated while staying overnight at an auto camp as the result of leaving a gas heater burn overnight and failing to provide ventilation. In reply to the contention that such conduct was so unreasonable and unauthorized as to remove him from the scope of his employment, this court said:

"It is practically impossible to distinguish this contention from a claim that the death of the employee was caused by his negligence. We must conclude that petitioner refrains from admitting this fact because it is so well known that negligence of the employee is no defense to a compensation

claim of the kind presented in this case." In *Stumar* v. *Industrial Acc. Com.,* 16 Cal. App. (2d) 429 [60 Pac. (2d) 557], it was held that a motion picture cameraman while inspecting a motion picture set in the performance of his duties, was in the course of his employment when using his own airplane to reach the set, because he had discretion in the means and manner of performing his duties, notwithstanding the fact that his employer would not have acquiesced in the use of such plane had he known that its use was contemplated.

It is worthy of note that by the weight of authority, even the fact that an injury was received by an employee while violating an instruction or rule of his employer, does not necessarily prevent the injured employee from recovering on the ground that the injury did not arise out of or occur in the course of the employment. (See cases collected: 119 A. L. R. 1409; 83 A. L. R. 1211; 58 A. L. R. 198; 26 A. L. R. 166; 23 A. L. R. 1161.) This court discussed that rule in *Pacific Employers Ins. Co.* v. *Chavez,* 5 Cal. (2d) 247 [54 Pac. (2d) 701]. ▮▮▮ If such is the law, then certainly, in a case such as this, where there was no prohibition against riding on the engines, it was frequently done by employees, and it occurred on premises which were used in part for the conduct of the employer's business, and the employee had wide discretion in the means and methods of performing his duty, and was performing service for his employer, there should be little doubt but that the injury is compensable. In *Prentice* v. *Twin City Wholesale Grocery,* 202 Minn. 455 [278 N. W. 895], an employee was injured when he jumped on a horizontal conveyor of goods, intending to ride to another portion of the building to perform a duty for his employer. Although he violated an order of the employer in riding on the conveyor, the injury was held to have arisen out of and in the course of the employment.

▮▮▮ The circumstance that Macfie may have been a trespasser on the engine as to the Southern Pacific Company, does not alter the situation. This is not a common law negligence case, and he was not a trespasser as to his employer. He acted in good faith in obtaining permission to ride from the fireman, and in view of the circumstances of the case it may be said that the employer authorized the trespass. (See *Bountiful Brick Co.* v. *Giles,* 276 U. S. 154 [48 Sup. Ct. 221, 72 L. Ed. 507].

For the foregoing reasons we are not inclined to disturb the findings of the respondent Commission that Macfie's injury arose out of and in the course of his employment.

The award of the Industrial Accident Commission is affirmed.

Traynor, J., Curtis J., Shenk, J., and Gibson, C. J., concurred.