[Civ. No. 8619. Third Dist. Nov. 23, 1954.]

LLOYD WINTER, a Minor, etc., Petitioner v. INDUSTRIAL ACCIDENT COMMISSION and STOCKTON GOLF AND COUNTRY CLUB, Respondents.

Pitts & Bates for Petitioner.

T. Groezinger and Edward A. Corten for Respondents.

VAN DYKE, P. J.—On petition we heretofore issued a writ to review an order of the Industrial Accident Commission denying compensation to petitioner for the loss of an eye.

Respondent commission found that petitioner's injury did not arise out of and in the course of his employment as a caddy by the Stockton Golf and Country Club.

There is no dispute as to the following facts: The Stockton Golf and Country Club maintains a golf course for the use of its members. Petitioner was working as a caddy, performing the usual duties of that employment. Petitioner worked during the 1952 summer vacation under a work permit granted by the proper authorities. Usually he reported at the club about 9 a. m. each day, signed his name on a sheet of paper, and waited until he was called by the caddy master. On call he would go out on the golf course with a designated player who, when the round was finished, would pay him whatever he deemed the services were worth. After he had done some caddying he learned that caddies were permitted to play golf on Mondays on the golf course and he asked and received permission from the caddy master to do this. On Mondays the club members generally did not play, and the only regular employees present on the club grounds were those who cared for the grounds. The clubhouse and professional shop were closed, and, speaking generally, it was a day off at the club. A few members sometimes appeared and played. It was on this day off that caddies who had caddied long enough to learn something about the game were permitted to use the club course. On such occasions they furnished their own clubs and balls. Playing of the course by the caddies under the permission of the club had for some time been a custom prevailing at the club and generally most of the caddies used the privilege. Play by the caddies was not required as a condition of employment, they could play or not as they chose. On a day while petitioner was so playing the course he was hit in the eye by a ball played by another caddy. The play of the caddies was not supervised in the sense that anyone watched or controlled the play. ■ We take judicial notice of the following: Golf is played nationwide and is one of the popular games of our people. The game receives constant publicity in the sports columns of our newspapers and magazines and those who excel at it receive as much public acclaim as do the heroes of baseball and football. The game's greatest and most publicized players are usually professionals who learned the game as caddies. The game is played and can only be played on courses maintained at great expense by the members, in the case of private courses, or by considerable fees charged by the public courses for the privilege of play. Considering the propensities of youth, the privilege of free play on a golf course would be eagerly sought and gratefully exercised by boys of petitioner's age.

Basically, the coverage formula of the Workmen's Compensation Law inheres in the clause "arising out of and in the course of employment," language which was taken bodily from the preceding early English law and which has been generally adopted in the American states. (Lab. Code, § 3600.) Our statute states that liability for compensation shall exist against an employer for injuries sustained by employees arising out of and in the course of employment and requires the concurrence of certain specifically stated conditions, viz.: (1) That the employee is at the time of the injury performing service growing out of and incidental to his employment; (2) That he is acting in the course thereof; (3) That the injury is proximately caused thereby. These conditions in reality add nothing to and take nothing from the general coverage formula above quoted. ■ Thus, as to the first contention, it has been held that it is not indispensable to recovery that the employee be rendering a service to his employer at the time of the injury. The essential prerequisite to compensation is that the danger from which the injury results be one to which he is exposed as an employee in his particular employment. (*Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 804, 809 [214 P.2d 41].) The second condition restates in part the general coverage clause. And as to proximate cause the statutory requirement as construed by the courts is not at all synonymous with the proximate cause as defined in the law of torts. Thus, in the so-called horseplay cases it is held that an injury sustained by a nonparticipating employee through the horseplay of fellow workers was proximately caused by the employment within the meaning of the code section.

The gravest question presented here is, Was the petitioner injured in the course of employment? If he was, then it is obvious that his injury arose out of his employment. A definite risk of injury to all who play or who assist in the playing of golf is exactly the risk which the petitioner ran when he was injured, that is, the risk of being struck by a flying golf ball. This risk he ran every time he caddied. He ran the same risk when, as a participant in the game, he was hurt.

■ Did petitioner sustain his injury in the course of employment? We hold he did. He was engaged at the time in a recreational activity, both permitted and, in the light of the facts, sufficiently encouraged by the employer, which permission and encouragement were conditioned solely upon

the fact that he was a caddy employed by the club. For that reason, and for no other, he was permitted to play on the course. To be sure, in order to exercise the privilege and obtain the recreation thus afforded he had to come back to the club on Mondays, but this was because that was the only day in the week when conditions at the club would permit the caddies to play. There is no material difference between the recreational activities of the caddies on a golf course on a Monday, and those of employees who, during lunch time, indulge in play, such as handball and basketball on the premises of the employer. Concerning recreational activities, and as to when injuries sustained therein are compensable, this rule is laid down in 1 Larson's Workmen's Compensation Law, section 22, page 328: "Recreational . . . activities are within the course of employment when (a) They occur on the premises during a lunch or recreation period as a regular incident of the employment." The test, says the author, is whether or not the recreational activity "is an accepted and normal one, since it thereby becomes a regular incident and condition of the employment. . . . The activity must be shown to have achieved some standing as a custom or practice either in the industry generally or in this particular place. Put negatively, this means that the course of employment does not embrace every spontaneous or unprecedented frolic that might be undertaken on the premises. There is a genuine distinction between a case in which employees have been playing handball against the wall of a garage at noon with more or less regularity, and a case in which a couple of employees find a ball and immediately start up a handball game in the shop where such a thing has never been heard of before." We think the facts in this case fulfill all the requirements of the text quoted from and that they fulfill all the requirements of our compensation law.

In support of the foregoing reference may appropriately be made to decisions in other states, which states have, so far as material here, the same coverage formula as our own. For example, in *Piusinki* v. *Transit Valley Country Club*, 283 N.Y. 674 [28 N.E.2d 401], where a caddy was injured on the employing club's property and it appeared that the game in which he was hurt was a recreational activity supervised by the caddy master as a representative of the employer and encouraged as practice play for the caddies because it tended to make them more efficient caddies, compensation was allowed. Note that in that case there was an element of benefit to the

employer in that the play of the caddies so permitted and encouraged tended to make them more efficient. We have no such evidence in this case, but we think that when the recreational activity is on the premises of the employer the element of specific benefit to the employer is not necessary. We make mention of this here because, on petition for reconsideration after denial of compensation, the petitioner requested leave to prove by the testimony of members that the playing of the caddies on Mondays was encouraged in order to improve the ability of the caddies. The referee in reporting on the petition for reconsideration to the commission stated that the obvious purpose of such testimony was to show that the caddy was performing a service inherently required by his contract of hiring and would, therefore, do no more than raise a conflict. Of course whether or not the commission ought to have reopened and taken the evidence is not before us, although such evidence would have been material in showing the conditions of employment bearing upon the question of whether or not the employee's injury was sustained in the course thereof. But we think it was unnecessary to show direct benefit to the employer from the practice play of the caddies, for here the evidence showed without dispute that permissive use by the caddies of the golf course was a well-established custom and, therefore, contemplated by the contract of employment. In *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 512, 517 [247 P.2d 697], it was indicated by the Supreme Court that a recreational activity would be compensable "where the employee was injured on the employer's premises, where he was making permissive use, as contemplated by the contract of employment, of the premises and equipment of the employer used in the conduct of the business, and where the recreational activity was conceivably of some benefit to the employer." The facts here clearly bring this case within the orbit of the foregoing pronouncement.

The respondent commission argues that even if it be conceded an award could be made upon the facts presented here, yet the issue was one of fact to be resolved by the commission, and that the commission's resolution cannot be set aside on review. We do not agree. The facts themselves are without dispute and hence the issue is one of law unless opposing inferences can be drawn, one set supporting an award, the other supporting the denial thereof. We think no such opposing inferences are permissible here and that the undis-

puted facts compel the conclusion that petitioner's injury arose out of and in the course of his employment. It was the employment which created the facts and conditions that brought petitioner to the premises of his employer to engage in the permitted and encouraged recreational activity. The course of the flying golf ball could only be intercepted at one place and the presence there of petitioner was due to the employment.

The order under review is annulled.

Peek, J., and Schottky, J., concurred.

Respondent's (Industrial Accident Commission) petition for a rehearing was denied December 17, 1954, and its petition for a hearing by the Supreme Court was denied January 19, 1955. Schauer, J., was of the opinion that the petition should be granted.