[L. A. No. 23954. In Bank. Mar. 20, 1956.]

JOANNE REINERT, a Minor, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Hennigan & Ryneal for Petitioner.

Everett A. Corten, Edward A. Sarkisian and Herlihy & Herlihy for Respondents.

CARTER, J.—This is a proceeding to review an order of the Industrial Accident Commission which denied an application for compensation for personal injuries on the ground that said injuries were not suffered in the course of employment.

Petitioner, Joanne Reinert, a minor, was employed by the Central Orange County Girl Scout Council at a camp which it conducted for Girl Scouts in the San Bernardino Mountains. Mrs. Mary K. Scholler was executive director of the council, camp director of the summer camp and was in charge of employment for the council. Although the council had conducted summer camps in previous years, this was the first time at this particular location which had been leased for the season from a church. The leased camp grounds com-

prised about 5 acres on which were located the main lodge, kitchen facilities, and barracks type sleeping quarters. Almost all of the recreational facilities were located off the camp grounds.

In May, 1954, when petitioner and Mrs. Scholler discussed her employment, Mrs. Scholler explained that horseback riding as an assistant counselor accompanying younger Girl Scouts would be part of her duties; that while on such duty she would pay no charge for the horse; that when she had any free time she would be privileged, upon obtaining permission from Mrs. Scholler, to go riding. Petitioner was told by Mrs. Scholler at the time of the interview that part of the compensation for the work was the availability of recreational activities as a counselor which would not otherwise be available to her. Petitioner was engaged as assistant waterfront director by the council by a written contract covering the period from June 30th, 1954, to July 30th, 1954, at a wage of $40 for the period. She was informed that this wage would not come ''close'' to paying for all the services she rendered but it was hoped that while at camp she would be able to take advantage of all the recreational facilities available; that it was hoped that ''you will also have been compensated to some extent'' by those recreational facilities. The fact that petitioner enjoyed horseback riding and intended to engage in that sport was discussed at the interview.

Each employee was on duty 24 hours a day except for one 24-hour period each week. During the on-duty hours if the employee was not needed for the actual work of the camp she could, upon obtaining permission, engage in recreational activities of her own choosing. When her duties so permitted, she was required to obtain permission for the precise recreational activity away from the camp in which she wished to engage.

Prior to her injury, petitioner had gone horseback riding some six times, three of them without charge to her because she rode as a counselor accompanying Girl Scouts and three times for her own recreation for which she was charged a reduced rate of $1.00 per hour by the stable. Horses were procured at Wilson's Stables located a half mile from the camp through an arrangement whereby the campers and counselors could ride at a lower rate than that charged the general public.

On July 30th, the day petitioner received her injuries, the last group of Girl Scouts had left the camp at around noon.

Some of the counselors also left at that time, but petitioner and other counselors stayed to close up camp, pack the equipment and prepare it for loading into trucks which were to depart the next day. Petitioner and some of the other counselors, including Mrs. Scholler, had made plans a day or two earlier to go for a final horseback ride and swim during the afternoon of the 30th after which they were to return to camp for the final packing and clearing up prior to loading. Mrs. Scholler received a call elsewhere and was unable to go on the ride but granted permission to petitioner and the other younger counselors to go on the horseback ride.

At Wilson's Stables petitioner mounted a horse chosen for her by the attendant at the stable and started off to ride along a bridle path nearest to the camp. After a few minutes the horse bolted and petitioner was thrown to the ground and rendered unconscious. She was discovered later and taken to a hospital.

Petitioner's injuries are not in dispute. She is paralyzed and will remain so for the rest of her life. In addition to the transection of the spinal cord, she suffered broken ribs, broken maxilla, traumatic heart damage and lung damage.

The only question involved here is whether petitioner's injuries were suffered in the course of her employment. Respondents argue that they were not because of two factors: (1) That the accident occurred while petitioner was riding for her own recreation; and (2) that it occurred at a location off the premises of the employer and not under its control. Petitioner, on the other hand, contends that an injury is compensable even though it arose from an activity not primarily for the benefit of the employer, provided that such activity is related to the employment or contemplated as part of the employment, and that the fact that the injury occurred on premises not directly owned or controlled by the employer is immaterial so long as the injury arose out of the employment.

The day the accident occurred, July 30th, was covered by the terms of the written contract entered into between petitioner and her employer and is sufficient to show that her employment had not terminated despite the argument of respondents that petitioner "volunteered" to remain and assist in the closing of the camp and the packing and loading of the equipment. We have then to determine whether the recreational horseback ride for which petitioner was granted permission was contemplated as part of her employment.

It is apparent from the evidence heretofore set forth that recreational horseback riding during her free time was considered as part of the compensation to be paid by the employer for petitioner's work; that she was both encouraged and permitted to go horseback riding in her free time during working hours at lower rates arranged by the employer with the stable. In addition, it appears inferentially that the Wilson's Stables was the only one in the area available to the Girl Scouts and their counselors.

In *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 513 [159 P.2d 625], where an employee was drowned while washing in a reservoir while on his way to his employer's office to collect his pay, we held: "The mere fact that an employee is performing a personal act when injured does not *per se* bring him without the purview of the compensation law. The test is stated in *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567, 573 [99 P.2d 1089] : 'The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do.' " In *Phoenix Indem. Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856, 861 [193 P.2d 745], where a pilot was killed while taking his young daughter for an airplane ride, we held that : ". . . although it may be conceded that Hamilton was deriving a personal benefit from the flight by determining his daughter's aptitude for flying, this 'does not *per se* bring him without the purview of the compensation law . . . "The true rule . . . is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do." ' (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 513 [159 P.2d 625]). Benefits to the employer, or to the employee, are not mutually exclusive, and 'where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer.' (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758-9 [172 P.2d 1].)" In *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751, 758, 760 [135 P.2d 158], the injured employee had the implied consent of her employer to go on personal

errands during working hours. The court there said that it was not indispensable to recovery that the employee be rendering service to his employer at the time of the injury if the act was contemplated by the employment. It was there held that any reasonable doubt as to whether an act was contemplated by the employment, in view of this state's liberal policy of construction in favor of the employee, should be resolved in favor of the employee. (See also *Heaton* v. *Kerlan,* 27 Cal.2d 716, 720 [166 P.2d 857]; *Employers' etc. Corp.* v. *Industrial Acc. Com.,* 37 Cal.App.2d 567 [99 P.2d 1089]; *Western Pipe etc. Co.* v. *Industrial Acc. Com.,* 49 Cal.App.2d 108 [121 P.2d 35].) The record here clearly shows that petitioner's wage was low; that it had been difficult to procure counselors for the camp; that it was specifically contemplated by the employer that the use of the available recreational facilities was considered "compensation" for the long hours and exacting work.

The present case, although a much stronger one factually, is very like that of *Winter* v. *Industrial Acc. Com.,* 129 Cal. App.2d 174, 176, 177 [276 P.2d 689], where the court annulled an order of the commission which denied compensation to a caddy who lost an eye as a result of being struck by a golf ball. The caddy was permitted to play, without charge on his day off, on the golf course where he was employed. At the time of his employment, the caddy did not know that such permission could be obtained. It was during such free play on his day off when he received his injury. The court held that the injury was sustained in the course of petitioner's employment; that it was not indispensable to recovery that the employee be rendering a service to the employer at the time of injury; and as an additional argument in favor of recovery, the court said: "The essential prerequisite to compensation is that the danger from which the injury results be one to which he is exposed as an employee in his particular employment. (*Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 804, 809 [214 P.2d 41].)" The court said, further, that "He [petitioner] was engaged at the time in a recreational activity, both permitted and, in the light of the facts, sufficiently encouraged by the employer, which permission and encouragement were conditioned solely upon the fact that he was a caddy employed by the club. For that reason, and for no other, he was permitted to play on the course. . . . Concerning recreational activities, and as to when injuries sustained therein are compensable, this rule is laid down in

1 Larson's Workmen's Compensation Law, section 22, page 328: 'Recreational . . . activities are within the course of employment when (a) They occur on the premises during a lunch or recreation period as a regular incident of the employment.' The test, says the author, is whether or not the recreational activity 'is an accepted and normal one, since it thereby becomes a regular incident and condition of the employment. . . . The activity must be shown to have achieved some standing as a custom or practice either in the industry generally or in this particular place. . . .' " In *Satchell* v. *Industrial Acc. Com.*, 94 Cal.App.2d 473, 478 [210 P.2d 867], where an employee died after having drunk cleaning fluid thinking it was whiskey, the court said that the drinking of whiskey under the circumstances related was to be anticipated under the conditions of his employment, and held that "It is too well settled to admit of question that an injury is compensable if the employee is at the time engaged in doing something he might reasonably have been expected to do while in the performance of his duty. (*Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 513 [159 P.2d 625]; *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756 [172 P.2d 1]; *Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281 [131 P.2d 521, 144 A.L.R. 358].)" (See also *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 804, 809 [214 P.2d 41]; *City & County of San Francisco* v. *Industrial Acc. Com.*, 61 Cal.App.2d 248, 251 [142 P.2d 760]; *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505, 508 [173 P. 1105, 5 A.L.R. 1518].) ■ We conclude, therefore, that recreational horseback riding was considered by both employer and employee as part of the compensation; that such consideration was the practice of the employer; and that the danger from which the injury resulted was "one to which he [the employee] is exposed as an employee in his particular employment." (*Winter* v. *Industrial Acc. Com.*, 129 Cal.App.2d 174, 176 [276 P.2d 689]; *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40, 44 [112 P.2d 615]; *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433, 436 [213 P. 257].) Here, as in the Winter case, petitioner's injuries arose from the very risk to which she was exposed as part of her duties—riding as a counselor with the Girl Scouts.

■ As we held in *Truck Ins. Exch.* v. *Industrial Acc. Com.*, 27 Cal.2d 813, 819 [167 P.2d 705], "An employe cannot

be required to forego a part of his compensation in order to relieve the employer from risk. 'The duty to pay and the right to receive the compensation were integral parts of the contract of employment,' and 'The medium of exchange in which wages happen to be paid is a mere accidental circumstance and should not be permitted to cloud the issue.' (*State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1924), *supra,* 194 Cal. 28, 34-35 [227 P. 168]; *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1945), *supra,* p. 432 [26 Cal.2d 514 (159 P.2d 625)].)''

The second argument made by respondents is that the injury occurred off the employer's premises in a location not directly owned or controlled by it, and that the cases of *Fireman's Fund Ins. Co.* v. *Industrial Acc. Com.,* 39 Cal.2d 529 [247 P.2d 707], and *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 39 Cal.2d 512 [247 P.2d 697], are directly in point. In both cases employees engaging in recreational activities during time off from work were injured off the employer's premises. Both cases are readily distinguishable from the one under consideration. In the Fireman's Fund case, the employee was injured off the employer's premises where her activities would not normally take her; neither were such activities contemplated at the time of employment as part of her compensation. In the case at bar, it was contemplated at the time of employment that the very activity causing petitioner's injuries would be engaged in as part of the compensation for her employment; it was further contemplated that the very premises on which she was injured would be used by her in engaging in that activity. In the Liberty Mutual case, swimming was purely a personal diversion on the part of the injured claimant; it had not been discussed at the time of his employment; it played no part in the compensation for the employment as petitioner's horseback riding did in the case at bar. No permission to swim was given the claimant in the Liberty Mutual case; specific permission to ride was given petitioner here.

There is ample authority to support petitioner's contention that an injury is compensable if it results from an activity contemplated by the employment, even though it occurs in a location not directly owned or controlled by the employer (*State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 194 Cal. 28, 31 [227 P. 168]; *Associated Indem. Corp.* v. *Industrial Acc. Com.,* 18 Cal.2d 40, 45 [112 P.2d 615]; *Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8, 11 [118 P.2d

809] ; *California Cas. Indem. Exch.* v. *Industrial Acc. Com.,* 21 Cal.2d 751, 758 [135 P.2d 158] ; *Truck Ins. Exch.* v. *Industrial Acc. Com.,* 27 Cal.2d 813, 816 [167 P.2d 705] ; *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.,* 28 Cal.2d 756, 760 [172 P.2d 1] ; *Phoenix Indem. Co.* v. *Industrial Acc. Com.,* 31 Cal.2d 856, 861 [193 P.2d 745] ; *Papineau* v. *Industrial Acc. Com.,* 45 Cal.App. 181, 183 [187 P. 108] ; *Matthews* v. *Naylor,* 42 Cal.App.2d 729, 732 [109 P.2d 978] ; *Western Pipe etc. Co.* v. *Industrial Acc. Com.,* 49 Cal.App.2d 108 [121 P.2d 35] ).

As we held in *Associated Indem. Corp.* v. *Industrial Acc. Com.,* 18 Cal.2d 40, 45 [112 P.2d 615], "In order that an employee may be considered as upon his employer's premises at the time of the injury it is not necessarily essential that the premises be circumscribed by walls or barriers (*Makins* v. *Industrial Acc. Com.,* 198 Cal. 698 [247 P. 202, 49 A.L.R. 411]) ; nor that the same be wholly under the control of the employer. (*Globe Indem. Co.* v. *Industrial Acc. Com.,* 208 Cal. 715 [284 P. 661] ; *Judson Mfg. Co.* v. *Industrial Acc. Com.,* 181 Cal. 300 [184 P. 1] ; *Starr Piano Co.* v. *Industrial Acc. Com.,* 181 Cal. 433 [184 P. 860].)" The employee in the Associated case was on some railroad tracks when he was injured, and the court concluded that he was on the premises "with the consent and approval of his employer, and was performing his duties thereon in going from the depot to the dock."

Petitioner contends that she was denied due process of law because of the referee's refusal to admit in evidence a letter written by Mrs. Scholler to petitioner's counsel. The letter contained a statement that the counselors' recreation was considered part of their compensation and that it "was so intended" at the time of their employment. It is apparent that the letter constituted an admission and should have been admitted in evidence when it was offered at the first hearing when Mrs. Scholler was not available as a witness. She testified, however, at a later hearing to the same effect when she stated: "I mentioned at the time of the interview [with petitioner] we do say that the compensation by no means shows that we are trying to pay you for your services but that we recognize it is just a very little bit but we hope that while you are there *you will also have been compensated to some extent to take advantage of the recreational opportunity that you can do as a counselor that you can't do ordinarily.*"

(Emphasis added.) In view of the above testimony and the liberal rules of evidence prevailing in the Industrial Accident Commission hearings (Lab. Code, § 5708) it does not appear that petitioner was prejudiced in any way by the exclusion of the letter.

Respondents' final contention is that whether or not an injury was suffered in the course of employment is one of fact and that the finding of the commission is conclusive. Where, as here, there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law and a purported finding of fact on that question is not binding on an appellate court (*Southern Pac. Co.* v. *Pillsbury,* 170 Cal. 782, 783 [151 P. 277, L.R.A. 1916E 916]; *Hines* v. *Industrial Acc. Com.,* 184 Cal. 1, 4 [192 P. 859, 14 A.L.R. 720]; *Crown City Lodge* v. *Industrial Acc. Com.,* 10 Cal.App.2d 83, 87 [51 P.2d 143]; *San Diego T. & S. Bank* v. *County of San Diego,* 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416]).

Particularly applicable in this connection is the holding in *Winter* v. *Industrial Acc. Com.,* 129 Cal.App.2d 174, 178-179 [276 P.2d 689], where the court, in annulling an order of the commission denying compensation, had this to say: "The respondent commission argues that even if it be conceded an award could be made upon the facts presented here, yet the issue was one of fact to be resolved by the commission, and that the commission's resolution cannot be set aside on review. We do not agree. The facts themselves are without dispute and hence the issue is one of law unless opposing inferences can be drawn, one set supporting an award, the other supporting the denial thereof. We think no such opposing inferences are permissible here and that the undisputed facts compel the conclusion that petitioner's injury arose out of and in the course of his employment. It was the employment which created the facts and conditions that brought petitioner to the premises of his employer to engage in the permitted and encouraged recreational activity. The course of the flying golf ball could only be intercepted at one place and the presence there of petitioner was due to his employment." The same holding applies with equal force here. It was the employment which created the conditions which brought petitioner to engage in the permitted and encouraged recreational activity. The question is, therefore, one of law for this court to decide. It appears to us that petitioner's

injuries occurred in and arose out of the course of her employment.

The award is annulled.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

SPENCE, J.—I dissent.

The respondent commission found that Miss Reinert "did not sustain any injury arising out of or occurring in the course of said employment." The majority opinion annuls the award based upon this finding and concludes as a matter of law that the injury here "occurred in and arose out of the course of her employment." I am of the view that the majority opinion has usurped the fact-finding function of the commission by drawing inferences which are contrary to those drawn by the commission, and in some instances, contrary to the evidence itself; and that the majority opinion has thereby reached conclusions which cannot be justified.

Miss Reinert was employed as a lifeguard and swimming counselor at the Girl Scout Camp following her interview with Mrs. Scholler. The recreational features of the work were discussed at the interview as well as the arrangements for free time during which the members of the staff could leave the camp and do anything that they might choose to do. No emphasis was placed upon the particular nature of any free time activity such as horseback riding, nor was Miss Reinert thereafter "required to obtain permission for the precise recreational activity away from camp in which she wished to engage," as indicated in the majority opinion. With respect to horseback riding, Miss Reinert testified as follows: "Q. Did she (Mrs. Scholler) say something about having any opportunities to go horseback riding by yourself or when you were not with the little girls? A. Well, I don't remember whether she did or not." Miss Reinert learned after arriving at camp that she could go horseback riding in her free time on payment of $1.00 per hour to Wilson's Stables, which was the fixed charge for "all organized camps—whether campers or staff personnel."

Under the evidence, the referee of the commission reported that "It is my opinion that the claimant in exercising her privilege on the afternoon of July 30, 1954, to join with other employees in horseback riding did not engage in any activity which can be designated as arising out of and occurring in the course of her employment." And the commission, in

denying reconsideration, said that ". . . there is no theory upon which applicant could be awarded compensation benefits nor her injury be held to arise out of and occur in the course of the employment." It further said: "It is true that many employments are attractive because of recreational facilities which are available in the vicinity of the place of employment. This in the opinion of the Panel, does not result in the extension of the mantle of the 'employer-employee' relationship over such recreational facilities so as to make an injury sustained while the employee enjoys such recreation compensable."

The facts in the present case are neither unusual nor complicated. The record presents the ordinary situation where an employee accepts a particular employment because of the desirable nature of the work and because of the opportunities afforded during her free time for recreational activities which she enjoys. It is a matter of common knowledge that many persons accept such desirable employment each year in the recreational camps of our character building agencies, receiving their sustenance and little or no additional compensation. Similarly, many persons accept employment each year with commercial enterprises in our resort areas. No doubt, most of these persons are induced, at least to some extent, to accept such employment by the lure of the numerous recreational activities which may be enjoyed by the employees in their free time. Thus, in a very loose sense of the word, it may be said that they find some "compensation" in the enjoyment of their free time activities, but it cannot be said that these free time activities, away from the premises of the employer and beyond the sphere of any right of control by the employer, constitute "part of the employment" or "part of the compensation to be paid by the employer for petitioner's work," as stated in the majority opinion. The employer here paid nothing, directly or indirectly, in connection with the employees' free time horseback riding but, on the contrary, the employees paid directly to the stable all charges which they incurred for such riding.

It is significant that neither the place where the accident occurred, the equipment being used, or the nature of the activity was such as to give the employer any right of control of the employee's free time recreational activity at the time and place where the injury occurred. The stable was conducted by an independent third party at a location approximately 1½ miles from the camp of the employer and the

accident occurred at a point approximately 1 mile from the camp. Neither the horse trail on which Miss Reinert was riding nor any other such trail ran through the employer's camp, or any closer than one-half to three-quarters of a mile therefrom. Hence the injury here was as much apart from the employment as were the injuries in the cases hereinafter cited, which injuries were held not to be compensable; and while the employment here, as in those cases, may be said to have brought the employee to the place from which she departed for her free time recreational activity and may be said to have afforded her the opportunity for such activity, it cannot be said that the injury sustained in that activity arose ''out of and in the course of the employment.'' It therefore appears to me that the majority opinion here is contrary in principle to our recent decisions in *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 512 [247 P.2d 697], and *Fireman's Fund Ins. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 529 [247 P.2d 707] ; and that it is likewise contrary in principle to the cases of *Graf* v. *Montecito County Water Dist.*, 1 Cal.2d 222 [34 P.2d 138], and *Arabian American Oil Co.* v. *Industrial Acc. Com.*, 94 Cal.App.2d 388 [210 P.2d 732], in which compensation was denied to employees who were injured while engaged in the permitted use of their employers' equipment for free time recreational activity away from the premises of their employers.

There is no conflict in the testimony regarding the nature of the trip on which Miss Reinert was injured. It shows that ''That trip had nothing to do with anyone's duties in connection with the camp''; that her superior had ''no interest in their activities in their free time'' but ''just hoped they had a good time''; that on the afternoon in question ''the horseback ride and swimming was considered free time for everybody''; that from 2:30 p.m. on ''all of the unit leaders and counselors and assistant leaders were free''; that all that her superior required in connection with their free time was that they ''checked out and checked in''; that the purpose of so checking was ''Just so I knew where they were going— so if their parents came to look for them in an emergency . . .'' Miss Reinert testified that it was a ''voluntary matter'' on her part ''to decide to go riding''; that ''I wasn't busy, and I just thought I would like to go horseback riding, and so I went to Mrs. Scholler and asked her if there is anything to do, and she said there wasn't, so I went riding.'' It thus

appears that the "permission" to which reference is made in the majority opinion amounted to nothing more than permission for the allowance of free time in addition to the regular day off, and that the employees were "encouraged" to go horseback riding only in the sense that they were encouraged to use their free time to engage in any recreational activity of their own choosing. The employees were not required to go horseback riding at any time during their free time, and Miss Reinert could have decided on the afternoon in question to engage in mountain climbing, boating, swimming, diving, sun-bathing, fishing, touring in her own car, patronizing places of public accommodation or amusement, or any other activity which might be enjoyed in the general area. It was she who suggested that some of her coworkers go with her on their free time on that day, first for a ride and then for a swim at a lake located five miles from the camp of her employer. Some followed her suggestion, and others did not, but the fact remains that she and the others were at liberty to go wherever they chose and to do anything they desired to do. Such activity was typical of the free time activity enjoyed by employees generally when relieved from the duties of their employment and cannot be said to be "part of the employment."

The cases upon which the majority opinion relies do not sustain the conclusion reached therein. Typical of the cited cases are those in which injuries have been held compensable under certain circumstances when they occurred on premises of the employer (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625]; *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751 [135 P.2d 158]; *Winter* v. *Industrial Acc. Com.*, 129 Cal.App.2d 174 [276 P.2d 689]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]) or at places customarily used as the immediate approaches to the premises of the employer (*Freire* v. *Matson Navigation Co.*, 19 Cal.2d 8 [118 P.2d 809]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 P. 168]) or during brief deviations for personal reasons from the actual work of the employer, or at a time when the employee could be said to be acting both on behalf of himself and his employer (*Phoenix Indem. Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856 [193 P.2d 745]; *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756 [172 P.2d 1]; *Western Pac. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754]; *Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d

108 [121 P.2d 35]). These cases demonstrate that the courts have consistently and conscientiously endeavored to apply the rule of liberal construction (Lab. Code, § 3202) in determining whether any given injury ''arose out of and in the course of'' the employment as required by our statute. (Lab. Code, § 3600.) However, courts may not in good conscience nullify the requirements of the statute under the guise of liberal construction, and I am of the view that the majority opinion here results in such nullification.

With respect to the letter which was denied admission in evidence, I agree that it was covered in substance by the other testimony of Mrs. Scholler; but I do not believe that the use of the word ''compensate'' or ''compensation,'' considered in context in either the letter or the testimony, would support a finding or conclusion that the employee's free time activities of her own choosing, far removed from the employer's premises and outside of the sphere of any right of control by the employer, were ''part of her employment'' or that the injury incurred in such activities ''arose out of or in the course of'' her employment. On the other hand, I am of the view that the commission's finding to the contrary was abundantly supported by the evidence.

I would affirm the award.

Schauer, J., and McComb, J., concurred.

The petition of respondents Central Orange County Girl Scout Council and Globe Indemnity Co. for a rehearing was denied April 18, 1956. Spence, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.